OPINION
Tammie L. Sanders appeals from a judgment of the Darke County Court of Common Pleas, which denied her motion to modify custody of her children.
The facts and procedural history of the case are as follows. The facts will be discussed in more detail under the first assignment of error.
Leonard and Tammie Sanders were divorced in 1990, and Mr. Sanders was awarded custody of the parties' three minor children in an uncontested proceeding. The three children were Eddie, Savannah, and London. From the time of the divorce through February 1999, Ms. Sanders intermittently stayed at the former marital residence with Mr. Sanders and the three children. According to Ms. Sanders, she lived there most of the time during these years because the parties had reconciled and because the arrangement enabled her to be with her children. According to Mr. Sanders, Ms. Sanders' stays with the family were short-term and sporadic and were frequently interrupted by extended periods during which she lived with other men or during which her whereabouts were unknown. The parties agree that, in February 1999, Ms. Sanders moved in with another man.
In June 1999, Ms. Sanders took physical custody of the parties' two daughters, Savannah and London. On July 2, 1999, she filed a motion seeking permanent custody of the three children and temporary custody of Savannah and London. Although the motion requested custody of all of the children, it seems that Ms. Sanders was particularly interested in obtaining custody of the two daughters. The trial court granted Ms. Sanders' motion for temporary custody of the girls, referred the matter to a magistrate for a hearing on the motion for a change of custody, and appointed a guardian ad litem. The magistrate conducted a hearing in September 1999 and recommended that the motion for a change of custody be denied. After considering Ms. Sanders' objections to the magistrate's report, the trial court adopted the magistrate's recommendation.
Ms. Sanders raises two assignments of error on appeal.
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO MODIFY CUSTODY TO APPELLANT BECAUSE A CHANGE OF CIRCUMSTANCES HAD BEEN SHOWN, MODIFICATION WAS IN THE BEST INTERESTS OF THE CHILDREN, AND ANY HARM IN THE CHANGE OF THE ENVIRONMENT WAS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE IN THE ENVIRONMENT.
Ms. Sanders contends that the trial court did not expressly find a change of circumstances but that the evidence did compel such a conclusion. She also contends that the trial court's discussion of the statutory factors to be considered in determining the best interest of the children supported a change in custody and that, "if the Trial Court failed to so find, then it incorrectly applied those statutory criteria."
At the outset, we will briefly address Ms. Sanders' apparent uncertainty about what the trial court concluded, expressly or otherwise. In the trial court's judgment entry adopting the magistrate's decision, the trial court specifically stated that "there ha[d] been a change of circumstances concerning the children since the prior Order." We need not address Ms. Sanders' argument regarding a change of circumstances because the trial court agreed with her on this point. The trial court also expressly found that the proposed modification did not serve the best interest of the children and that the advantages of a change in custody did not outweigh the harm likely to be caused by the change.
R.C. 3109.04(E)(1)(a) provides that a court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds that a change has occurred in the circumstances of the children or of the residential parent and that the modification is necessary to serve the best interest of the child.
 In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent * * *;
 (ii) The child, with the consent of the residential parent * * *, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. 3109.04(E)(1)(a). Trial courts must be given wide latitude when considering allocations of parental rights and responsibilities. Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph two of the syllabus. Judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the weight of the evidence. Masitto v. Masitto
(1986), 22 Ohio St.3d 63, 66.
R.C. 3109.04(F)(1) sets forth numerous factors which the trial court shall consider in determining the best interest of children, along with any other factors that it finds to be relevant. These factors include: the wishes of the parents and children; the relationships of the children with their parents and siblings; the children's adjustments to their home, school, and family; the mental and physical health of those involved; the parents' willingness to facilitate visitation and companionship rights; and the payment of child support.
Ms. Sanders contends that, upon considering the factors set forth in R.C. 3109.04(F)(1), the trial court could not have reasonably concluded that it was not in her children's best interest to award her custody. We disagree. The record is replete with evidence that Ms. Sanders maintained only a transient presence in her children's lives and that her lifestyle was sufficiently unstable to call into question her ability to care for her children on a long-term basis. Although Ms. Sanders claimed that she had lived with Mr. Sanders and her children and had been the primary care giver from 1991 through 1999, with a few absences totaling only several months during that eight year period, numerous witnesses contradicted this account. Neighbors, babysitters, and Mr. Sanders testified that Ms. Sanders' presence at the family home had been the exception, not the norm, that she had regularly been gone for months at a time during which neither Mr. Sanders nor the children knew how to reach her, and that the children had been upset by her lengthy absences. It is apparent from the guardian ad litem's report that the children's accounts also contradicted Ms. Sanders' version of her presence in their lives. The guardian ad litem recommended that the older daughter, Savannah, participate in therapy to help her deal with her separation anxiety and hurt brought on by years of inconsistent contact with her mother.
Ms. Sanders also claimed that she wanted her daughters with her, that her daughters wanted to be with her, and that Mr. Sanders "would not have any problem with the children living with [her] if he believed that she would stay with them, and still be in her present home a year from now." Accordingly, Ms. Sanders concludes that these factors weighed in favor of a change in custody. Again, Ms. Sanders' conclusion ignores a substantial amount of evidence. Mr. Sanders did state that he would not have any problem with a change in custody if he believed that Ms. Sanders would stay with the children and would live in the same home a year from now. He doubted, however, that Ms. Sanders would be able to do so. Apart from Ms. Sanders' own testimony, the evidence strongly suggested that she had frequently moved from place to place, had lived with many different men, and had held many different jobs. During the preceding years, Ms. Sanders' whereabouts had often been unknown by Mr. Sanders and the children as well as by Ms. Sanders' siblings, as evidenced by the difficulty in locating her when a family member was seriously injured in a car accident. Meanwhile, Mr. Sanders had lived in the same home, had held the same job, and had consistently provided for the children for many years. Moreover, the magistrate found that Ms. Sanders had never established a "consistent relationship" with her son from her first marriage and that Savannah's interest in living with her mother was apparently rooted in her belief that Ms. Sanders was less likely to leave again if the children lived with her. Based on this evidence, the trial court could have reasonably concluded that the wishes of the parents and children did not weigh in favor of a change in custody.
The witnesses agreed and the trial court found that the girls were very happy living with their mother. Ms. Sanders claims that this factor weighed in favor of a change in custody. However, because there was substantial evidence that the girls suffered hardship and sadness as a result of Ms. Sanders' extended and frequent absences, and this factor may have magnified their happiness upon being reunited with her, the trial court could have reasonably concluded that this factor was not entitled to significant weight.
The magistrate found that Mr. Sanders had been convicted of domestic violence both before and after the parties' divorce. Ms. Sanders claims that she should have been granted custody for this reason. The trial court noted, however, that Ms. Sanders had not contested custody at the time of the divorce and that she had left the children with Mr. Sanders repeatedly thereafter. Moreover, the evidence established that Mr. Sanders had voluntarily attended a batterers' support group for over three years, that he had done well in the program, and that he had not abused the children.
Ms. Sanders concludes that the trial court did not consider the siblings' relationships, the parties' mental health, or which party would be more likely to facilitate visitation and companionship rights because the trial court did not address these factors in its judgment entry. We note, however, that although the trial court is instructed to consider all relevant factors, including those enumerated in R.C. 3109.04(F), it is not necessary for the trial court to analyze each factor in its judgment entry.Bunten v. Bunten (1998), 126 Ohio App.3d 443, 447. Although not mentioned in the judgment entry, the trial court may have concluded that some of these factors also weighed in favor of denying Ms. Sanders' motion. In particular, Ms. Sanders had previously been convicted of interfering with Mr. Sanders' custody of the children, and the magistrate found that she had misled the court in her explanation of the circumstances under which the girls came to be in her physical custody just prior to the filing of her motion for change of custody. Ms. Sanders represented to the court that she had taken the girls to her home after she had found them home alone, that Mr. Sanders had not requested their return, and that his whereabouts had been unknown to her for about ten days after she picked up the girls. In fact, the magistrate concluded that the children had been staying with Ms. Sanders with Mr. Sanders' knowledge and consent and that the children had seen their father at the family home during the period when Ms. Sanders had claimed that his whereabouts were unknown. The guardian adlitem concluded that Ms. Sanders' claims of sexual abuse against the girls by Mr. Sanders and their older brother were lies, and that Ms. Sanders had lied to her about numerous other objectively verifiable claims. Moreover, Ms. Sanders indicated that, if she obtained custody of the girls, her preference would have been for them to have no contact with Mr. Sanders, but that any visitation that was awarded should be very limited. Mr. Sanders, on the other hand, wanted the girls to visit with their mother as much as possible so long as he knew where they would be. Considering this evidence and the attitudes reflected therein, the trial court could have reasonably concluded that Mr. Sanders was much more willing and more likely to facilitate visitation than Ms. Sanders would have been.
The trial court could have reasonably concluded that Mr. Sanders provided a stable and loving home for the children and that a change in custody was not in the children's best interest in light of Ms. Sanders' unreliability and instability. The trial court's denial of Ms. Sanders' motion for change of custody was amply supported by the evidence.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CORRECTLY APPLY THE STATUTORY CRITERIA IN DETERMINING WHETHER APPELLANT'S MOTION TO MODIFY CUSTODY SHOULD BE GRANTED.
Ms. Sanders claims that the trial court misapplied R.C.3109.04(E)(1)(a) because it read the requirements imposed therein in the conjunctive, rather than in the disjunctive. The statute provides that, before modifying parental rights and responsibilities, the trial court must find that there has been a change of circumstances, that the modification is necessary to serve the best interest of the children, and one of the following: the residential parent agrees to the change; the children have been integrated into the family of the person seeking to become the residential parent with the consent of the residential parent, or; the harm likely to be caused by a change of environment is outweighed by the advantages of the change to the children. R.C.3109.04(E)(1)(a). Ms. Sanders claimed that the advantages of a change in custody outweighed the disadvantages.
The magistrate's decision in this case set forth the statutory criteria warranting a change of custody in the conjunctive and addressed each of these factors. The magistrate found that Mr. Sanders had not consented to the change in custody and that the girls had not been integrated into Ms. Sanders' home with the consent of Mr. Sanders. One can also infer from the magistrate's decision that he rejected Ms. Sanders' claim that the advantages of such a change outweighed the disadvantages. Ms. Sanders claims that, by requiring her to prove all three factors, "the Trial Court held [her] to a standard beyond that which is required by Ohio law."
Ms. Sanders' argument ignores the trial court's judgment entry adopting the magistrate's decision. In that entry, the trial court acknowledged that the factors set forth in R.C.3109.04(E)(1)(a) "should be considered in the disjunctive rather than in the conjunctive as set forth in the Magistrate's Decision." The trial court, however, agreed with the magistrate's assessment that none of the three criteria applied and that it was not in the children's best interest to modify the custody arrangement. Accordingly, Ms. Sanders was not prejudiced by the magistrate's error.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
 ______________________ WOLFF, J.
BROGAN, J. and FAIN, J., concur.