DECISION AND JUDGMENT ENTRY
David Jamieson appeals the custody determination made by the Highland County Court of Common Pleas. He argues that the trial court's decision to adopt the proposed shared parenting plan proposed by his estranged wife, Lorraine Simmons, was against the manifest weight of the evidence. We disagree because the trial court's determination of custody is supported by substantial competent, credible evidence. Jamieson also argues that the trial court improperly adopted two different shared parenting plans on the same day, leaving the parties with no clear understanding of the terms of custody. We disagree because in a subsequent order, the trial court clarified the details of the custody order. Jamieson next argues that the trial court erred when it confused the parties by referring to the plaintiff as defendant and vice versa. We disagree because, reading the order as a whole, the court's intent regarding custody is clear. Jamieson also argues that the trial court erred by failing to consider his proposed shared parenting plan in its written decision. We disagree because there is no requirement that a trial court address every proposed shared parenting plan in its written decision. Jamieson finally argues that the trial court erred by not making independent findings of fact and conclusions of law, and by simply adopting Simmons' proposed findings of fact. We disagree because the trial court did not simply adopt the parties' proposed findings of fact. Accordingly, we affirm the judgment of the trial court.
 I.
The parties, both Canadian citizens, met in 1991 and began living together shortly thereafter. Simmons was working as an obstetrical nurse and Jamieson was serving in the Canadian military as a medical doctor. During Jamieson's tenure with the military, the parties moved around Canada. Simmons gave birth to the parties' son, Mark, in 1994. In 1995, Jamieson left the military and began seeking a job in the United States. Eventually he became employed as a family physician in Hillsboro, Ohio. In July 1995, the parties and their son attempted to enter the United States, but Simmons was denied entry. She was able to illegally enter the United States within a few days. In October 1995, she and Mark went to Canada for three weeks. Upon attempting to re-enter the country, she was arrested because she did not have the proper immigration status. She then stayed with Jamieson's parents in Victoria, Canada until January 1996, when she moved to Nova Scotia, Canada. The parties married on January 29, 1996, allowing Simmons to legally cross the border. According to Jamieson, he married Simmons only because Simmons threatened to keep Mark from him unless he married her.
In September 1996, the parties separated, but Simmons stayed in Hillsboro with Mark. The parties had a physical confrontation in December 1996. Simmons filed domestic violence charges against Jamieson. He was later acquitted.
On December 12, 1996, Simmons took Mark to her family's home in Nova Scotia, Canada, where the two would remain until May 1997. Also on December 12, 1996, Jamieson filed for divorce. However, Simmons had not yet been served with the complaint for divorce on December 12, 1996. After receiving notice of the pending divorce proceedings, Simmons returned to Hillsboro for a court hearing on jurisdiction in February 1997. Mark stayed with family in Nova Scotia.
The trial court held hearings on February 25 and 27, and December 16 and 17, 1998. By the time of the final hearing the only issues remaining concerned the child, Mark. By the time of the final hearing, Simmons' visa no longer permitted her to stay in the United States. The parties stipulated at the final hearing that pursuant to federal immigration law, the longer Simmons stayed illegally in the United States, the longer she would be barred from re-entering the United States.
The trial court ordered two different custody evaluations. The first, completed in June and July of 1997 by Dr. Hagen, ("the Hagen report") recommended that the parties negotiate a shared parenting agreement in which Mark spends an equitable amount with each parent until he enrolls in school. The Hagen report indicated that once Mark enters school, one parent should be the residential parent for the school year and the other should have Mark for the summer months. The Hagen report further indicated that if a shared parenting agreement was not possible, that Jamieson should be designated as the sole residential parent because Jamieson would be more likely to facilitate visitation due to Simmons' anger towards Jamieson.
Dr. Hagen later admitted to relying upon audiotapes made by Jamieson, which the trial court ruled inadmissible. Dr. Hagen also relied upon unsolicited materials submitted by the parties that were not shared with both parties prior to the report being made.
The second report, completed in September 1998 by Dr. Leslie Swift, ("the Swift report") did not recommend a particular custody arrangement. Instead, the Swift report listed three possible custody arrangements and the behavior and circumstances necessary for each to be successful.
At the February 1998, hearing, Simmons' therapist testified that she helped Simmons work through her anger surrounding the parties' relationship. She testified that she worked with Simmons on the problems that the Hagen report identified and does not agree with its recommendation.
Various family members and friends of the parties testified at both hearings about the parties' parenting abilities and the parties' relationships with Mark.
In June 1999, the trial court issued an opinion granting the parties a divorce and placing Mark with Jamieson until August 15 and then with Simmons during the school year and with Jamieson during Mark's summer vacations. Jamieson was given extensive visitation during Mark's breaks from school. On August 30, 1999, the trial court entered a divorce decree. The decree allocated the parental rights and responsibilities to both parents pursuant to the "Shared Parenting Plan of the Defendant adopted by the Court." The trial court then set forth the specific times that Mark would live with each parent. Also on August 30, 1999, the trial court entered a "Shared Parenting Decree," which approved the Defendant's shared parenting plan "as set forth in the Decree of Divorce." On January 3, 2000, the trial court entered a nunc pro tunc shared parenting decree, which stated:
 "The shared parenting decree approved by this Court and Journalized With the Clerk of Courts on August 30, 1999 was not intended to include Any (sic) previously filed shared parenting plan but incorporated the shared parenting plan of the Defendant as set forth in the Decree of Divorce also Journalized on August 30, 1999."
Jamieson appeals, asserting the following assignments of error:
 I. The trial court erred in granting Defendant/Appellee's plan for shared parenting because the Court's findings of fact overwhelmingly support Plaintiff/Appellant as the residential parent and legal custodian of the minor child, or in the alternative, support the adoption of Plaintiff/Appellant's plan for shared parenting according to the requirements of ORC 3109.04(F)(1) and ORC 3109.04(F)(2).
 II. The trial court improperly adopted two different shared parenting plans with different terms on the same day thereby leaving the parties with no clear understanding of which shared parenting plan is to prevail.
 III. The trial court in its decision entered June 16, 1999 confused the parties referring to Plaintiff as "Defendant" and vice versa resulting in an erroneous custody decision.
 IV. The trial court erred by ignoring the shared parenting plan submitted by Plaintiff/Appellant on February 17, 1998 and according it no notice and not even considering such plan when making its determination of residential parent.
 V. The Court erred by not making independent findings of fact and conclusions of law, but rather simply adopting proposed findings of fact which did not accurately reflect the testimony given and the evidence adduced.
 II.
In his first assignment of error, Jamieson argues that the trial court's custody determination is against the manifest weight of the evidence.
It is well settled that a trial court is given broad discretion in its determination of parental custody rights.Booth v. Booth (1989), 44 Ohio St.3d 142, 144, citing Miller v.Miller (1988), 37 Ohio St.3d 71. A trial court's custody determination will therefore not be disturbed unless it involves an abuse of discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,23.
This court will not reverse an award of custody as being against the weight of the evidence if it is supported by substantial competent, credible evidence. Davis v. Flickinger
(1997), 77 Ohio St.3d 415, citing Bechtol at the syllabus. We employ this standard of review because the trial court has the best opportunity to view the demeanor, attitude and credibility of all of the witnesses. Davis; Trickey v. Trickey (1952),158 Ohio St. 9.
In allocating the parental rights of the parties, the trial court must take into account the best interests of the children. R.C. 3109.04(B)(1). In determining the best interests of the children, the trial court must consider all relevant factors, including but not limited to, those listed in R.C.3109.04(F)(1)
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, * * *;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
We find that the trial court's custody determination is supported by substantial competent, credible evidence in this case.
Simmons and Jamieson are both Canadian citizens. Mark's relatives live in Canada. A substantial number relatives live within close proximity to Halifax, Nova where Simmons intended to live with Mark. Thus, Mark's interaction and interrelationship with his family is best by the trial court's order that Mark reside in Canada with Simmons during the school year and with Jamieson during the summer.
Simmons testified to a concern about Mark's cultural heritage if he were to attend school in the United States. Simmons and her sisters testified that, in their personal experience, the quality of Canadian schools and extra-circulars are excellent. Thus, Mark's adjustment to home, school, and community is best served by the trial court's order that Mark reside in Canada with Simmons during the school year and with Jamieson during the summer.
The Hagen report recommended a shared parenting agreement where once Mark is of school age, he resides with one parent during the school year and the other during the summer. Both the Hagen and the Swift reports indicate that both Jamieson and Simmons are mentally fit and capable of parenting Mark. Simmons has been Mark's primary care giver for his entire life. Given that Simmons can not reside in the United States, the mental and physical health of Mark, Jamieson, and Simmons is best served by the trial court's order that Mark reside in Canada with Simmons during the school year and with Jamieson during the summer.
While testimony established that Simmons was not as liberal with granting extra visitation as Jamieson would have liked, there was no testimony that either party continuously or willfully denied the other parent his or her right to court ordered visitation or violated any other court order. Moreover, Simmons therapist testified that Simmons has worked through her anger with Jamieson about the divorce, which may have previously kept Simmons from freely granting extra visitation. Thus, neither parent has willfully kept Mark from the other on a continuing basis. The trial court's order that Mark reside in Canada with Simmons during the school year and with Jamieson during the summer ensures that Mark have frequent and continuing contact with both parents.
At the time of the hearing, Jamieson was free to travel from the United States to Canada. However, Simmons was unable to remain in the United States and her immigration status could prevent her from returning. Regardless of the outcome of the proceedings below, Simmons was unable to stay in the United States and planned to establish her residence outside of Ohio. The trial court's order considered this fact and, in Mark's best interest, adopted a shared parenting plan that incorporated this reality.
Since there is substantial competent, credible evidence supporting the trial court's custody determination, we find that it is not against the manifest weight of the evidence and that the trial court did not abuse its discretion. Accordingly, we overrule Jamieson's first assignment of error.
 III.
In his second assignment of error, Jamieson argues that the trial court erred by adopting two conflicting shared parenting plans on the same day. As Jamieson alleges, the trial court's initial opinion and entry were somewhat unclear about the exact details of the shared parenting plan. However, the trial court later issued a clarification that the trial court adopted the shared parenting plan outlined in the divorce decree. Thus, the trial court clarified the order that Jamieson claims was confusing. Accordingly, we overrule his second assignment of error.
 IV.
In his third assignment of error, Jamieson argues that the trial court erred in making its custody determination because it erroneously referred to the Plaintiff as "Defendant." Jamieson points out three places in the nineteen page opinion where the trial court referred to one party by the other party's designation. However, reading the opinion as a whole, the trial court clearly contemplated that Simmons would have physical custody of Mark during the school year and Jamieson would have physical custody of Mark during the summer months and during many of Mark's school breaks. We refuse to find that the trial court's custody determination was erroneous simply due to three minor mistakes in an otherwise thorough, nineteen-page opinion that clearly identifies the parties who will have physical custody of the child. Accordingly, we overrule Jamieson's third assignment of error.
 V.
In his fourth assignment of error, Jamieson argues that under R.C. 3109.04(G) the trial court erred when the trial court made its custody determination without mentioning the shared parenting plan that he submitted in February 1998.
R.C. 3109.04(G) sets forth the procedure that the parents should follow when filing a shared parenting plan. It does not place any duties upon the trial court. Therefore, R.C.3109.04(G) does not require the trial court to specifically address every shared parenting plan filed by the parties in a written decision. Jamieson does not provide any other authority for his assertion that the trial court was required to specifically address every shared parenting plan filed by the parents. The trial court's nineteen-page decision is thorough and addresses the issues brought up at the hearing and in the parties' written arguments. We find that the trial court did not err in failing to specifically address the shared parenting plan filed by Jamieson in February 1998. Accordingly, we overrule Jamieson's fourth assignment of error.
 VI.
In his fifth assignment of error, Jamieson argues that the trial court erred by adopting proposed findings of fact instead of making independent findings. He argues that the trial court's findings of fact are slanted, misleading, and against the manifest weight of the evidence in violation of Kaechele v.Kaechele (1991), 72 Ohio App.3d 267. In Kaechele, the appellate court determined that the trial court did not err by adopting one party's proposed findings of fact without making any changes.
While the Kaechele court did set forth a "general rule * * * [that] a blanket adoption of a party's proposed findings of fact breeds error and reversal," the court went on to state that "this practice does not constitute error per se * * *" and held that the trial court's blanket adoption of one party's proposed findings of fact did not constitute an abuse of discretion.Kaechele at 276.
We find that the trial court did not adopt one party's proposed findings of fact. To the contrary, the trial court used part of each of the parties' summaries of the testimony of parties and evidence introduced and added to and deleted from the parties' written submissions. While Jamieson is correct that in many places in its opinion, the trial court took language directly from both parties' written submissions and did not summarize everything that every witness testified about, we find no error. Accordingly, we overrule Jamieson's fifth assignment of error.
 VII.
In sum, we overrule all of Jamieson's assignments of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
ABELE, J.: Concurs in Judgment and Opinion.
 HARSHA, J.: Concurs in Judgment and Opinion as to A/E II, III, IV, V. Concurs in Judgment only as to A/E I.
 BY: _______________________________ ROGER L. KLINE, Presiding Judge