OPINION
This matter came from the Ashtabula County Court of Common Pleas, Domestic Relations Division. Appellant, Victoria L. Headley, appeals the trial court's decision to change custody from her to appellee, Mark E. Headley.
Appellant and appellee were married on August 16, 1989. Two children were born as issue of this marriage: Hope Headley, born on October 28, 1989 and Nicole Headley, born on December 24, 1993. On October 14, 1997, appellant and appellee divorced. Despite the fact that the nunc pro tunc judgment entry indicated that the parties agreed to enter into a shared parenting plan with appellant acting as the primary residential parent and legal custodian, this shared parenting plan was never implemented. Further, under the nunc pro tunc order, visitation by appellee was to be "in accordance with the Standard Order of Visitation, * * * with the exception that [appellee] shall have five (5) weeks of visitation in the summertime. There shall be one (1) week of visitation with the paternal grandparents."[1]
On February 18, 1998, appellee was ordered to pay his current child support payments in the amount of $852.72 per month, plus a 2 percent administrative fee, and an additional $40 per month on the child support arrearage of $2,250 as of December 11, 1997.
Subsequently, on March 13, 1998, appellee filed an emergency motion for temporary change of custody and designation of residential parent and legal custodian because appellant had allegedly denied him visitation with the children on four occasions and telephone contact with the children. In addition, appellee filed a motion to appoint a guardian ad litem for the minor children.
Pursuant to a March 18, 1998 court order, attorney Tracey K. O'Day (referred to herein as "the guardian ad litem") was appointed as guardian ad litem. The paternal grandparents, Janice and Eugene Headley, filed a motion to show cause asserting that they were also denied visitation with the minor children.
In response to appellee's motion for emergency change of custody, the trial court conducted a modification hearing on December 31, 1998 and May 7, 1999. Evidence was submitted during this hearing, and numerous witnesses testified on behalf of appellant and appellee. In addition, the trial court also conducted an in camera interview with the minor children, Hope and Nicole. It was determined that Hope possessed sufficient maturity to express her preferences as to which parent should be designated as her residential parent and legal custodian. As to Nicole, the trial court found that she did not possess sufficient maturity to express her opinion as to who should be designated as her residential parent and legal custodian.
On May 10, 1999, the guardian ad litem filed her report and recommendation regarding the modification of custody. A judgment entry filed by the trial court, dated May 11, 1999, illustrates that the parties had until May 14, 1999 to submit their final arguments.
Nevertheless, on June 24, 1999, appellant filed a request for a hearing for the purpose of cross-examination of the guardian adlitem. In response, appellee filed an objection to the motion for cross-examination of the guardian ad litem, contending that appellant's request was untimely submitted. On July 2, 1999, the trial court issued a judgment entry wherein the court denied appellant's request to cross-examine the guardian ad litem and granted the paternal grandparents' motion to show cause. More importantly, the trial court concluded from the evidence presented at the modification hearing that the children's best interest would be served by a change of custody from appellant to appellee.
In response to the trial court's decision, appellant filed a timely notice of appeal, and respectively, she asserts two assignments of error for our consideration:
 "[1.] The trial court erred to the substantial prejudice of appellant when it overruled appellant's request for cross examination of the guardian ad litem[.]
 "[2.] The trial court abused its discretion and erred to the substantial prejudice of appellant when [it] found that a change in circumstances had occurred and when it determined that [the] best interests of the children require a change of custody to appellee father[.]"
 Under her first assignment of error, appellant maintains that the trial court should have allowed for the cross-examination of the guardian ad litem because her report was so damaging and unfair. Although appellant concedes that the request could have been submitted earlier with the trial court, she urges that no time limit was imposed for such a filing. Appellant also points to the fact that the request was filed only eight days prior to the trial court's issuance of the judgment entry. As a result, appellant believes that the trial court should have postponed its decision and granted her motion to cross-examine the guardian ad litem.
In response, appellee argues that the trial court had the discretion to overrule a request to cross-examine the guardian adlitem when such a request was submitted in an untimely manner without good cause or reasonable explanation.
In Silvis v. Silvis (Mar. 27, 1998), Portage App. No. 97-P-0071, unreported, at 3, 1998 WL 156897, this court articulated the appropriate standard of review.
 "An appellate court will not disturb the trial court's evidentiary rulings absent an abuse of discretion. An abuse of discretion connotes more than error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable."
 In the present case, it is undisputed that the report and recommendation of the guardian ad litem was filed with the trial court on May 10, 1999 for review by the parties. An examination of the transcript from the modification hearing reveals that the trial court selected May 14, 1999 to be the last day in which the parties were permitted to submit final written arguments and request a separate hearing to question the guardian ad litem on her report and recommendation.
In addition, a judgment entry filed by the trial court, dated May 11, 1999, indicates that the court did in fact set a deadline as to when the parties were to submit their final arguments:
 "Guardian ad Litem, Tracey O'Day, requested that she be permitted to submit the Guardian ad Litem's report in writing on May 10, 1999, and counsel will submit written final arguments, together with brief of law, on May 14, 1999." (Emphasis sic.)
 Copies of this judgment entry were mailed to all the parties involved in this dispute. Despite both oral and written notice from the trial court, appellant waited more than five weeks beyond the court ordered deadline to submit her motion for cross-examination of the guardian ad litem. Although appellant concedes that her request for cross-examination could have been submitted earlier, she provides no reasonable explanation as to why her request was filed in such an untimely manner. Therefore, we hold that the trial court did not abuse its discretion when it overruled appellant's request for cross-examination of the guardian ad litem on the basis that her request was submitted in an untimely manner. Appellant's first assignment of error is without merit.
Under appellant's second assignment of error, she claims that the trial court abused its discretion when it changed custody from appellant to appellee because there was no evidence of any change in circumstance. Accordingly, appellant's proposed error challenges the substance of the trial court's decision to modify the custody arrangement.
Specifically, appellant contends that the trial court could not rely upon the deprivation of visitation by appellant towards appellee because this was either nonexistent or sparse. Appellant claims that there is no evidence to indicate that appellant continuously thwarted visitations in a hostile manner. Since the time period from October 1997 to March 1998 was so short, appellant maintains that it is difficult to understand how a change in circumstance could occur as to visitation or hostile attitude over such a short span of time.[2]
In reply, appellee claims that appellant has failed to show this court that there had been an abuse of discretion by the trial court. Appellee argues that a residential parent's denial of visitation to the non-residential parent constitutes a change of circumstance, thereby warranting a modification in custody. During the modification hearing, appellant openly admitted to having denied appellee visitation with the minor children minimally on three or four occasions. In addition, appellee turns our attention to two letters written by appellant which dictated the precise and very limited dates and times that appellee could be allowed to visit with the children.
Before addressing the substance of appellant's argument, we need to articulate the appropriate standard of review. It is well-settled that the trial court's decision in disputes involving the custody of children is accorded deference upon review. The trial court's decision in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 417; Basinger v. Basinger
(Apr. 30, 1999), Trumbull App. No. 98-T-0080, unreported, at 2, 1999 WL 266606.
In the instant matter, the significant issue before this court is whether the trial court's determination that a change of circumstance had occurred and that the best interests of the children would be served by a modification of custody was an abuse of discretion. We begin first by briefly summarizing the requirements used in determining whether a modification of custody is appropriate.
The trial court must answer three questions: (1) Has there been a change in circumstances? (2) Is the modification in the child's best interest? (3) Will the harm that will result from the change be outweighed by the benefits that will result from the change in custody? Neale v. Neale (Feb. 6, 1998), Trumbull App. No. 97-T-0084, unreported, at 2, 1998 WL 173001.
The first issue we must consider is whether there was sufficient evidence of a "change in circumstances." Under R.C.3109.04, the trial court decides to whom the custody and control of a minor child shall be awarded and gives sufficient consideration to the best interest of the child. R.C.3109.04(E)(1)(a) governs modification of custody and provides in relevant part:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
"* * *
 "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 Accordingly, when considering a modification of a custody arrangement, R.C. 3109.04(E)(1)(a) requires a finding of a "change in circumstances" before the trial court can proceed to a determination of the best interests of the child.
 "Clearly, there must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." (Emphasis sic.) Davis at 418.
It is well-settled in Ohio that:
 "* * * a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody." Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 773.
The Supreme Court of Ohio further recognized that:
 "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in circumstances because of a child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues." Davis at 416-417.
 To summarize, under Ohio law, interference with visitation and hostility by a parent may be considered as part of a change of circumstance which could warrant a modification in custody.
In the present case, the trial court specifically based its findings of a change in circumstances as a result of appellant's hostile behavior towards appellee's visitation rights. Specifically, the trial court recognized that appellant had acted in such a manner as to limit visitation to both appellee and the paternal grandparents. The court described appellant as engaging in a "systematic pattern" of conduct to limit or deny appellee's visitation with the children.
As for the letters written by appellant to appellee dictating visitation dates, the trial court viewed these letters as being examples of appellant's "arbitrary approach in defining and limiting [appellee's] * * * rights." A handwritten letter by appellant dated June 1, 1998 dictates to appellee and the paternal grandmother the summer visitation schedule. It declared that the summer visitation dates will be from July 6 through 12 and July 20 through 26, and "[t]hese are the only weeks available to you that I don't have scheduled appointments." Further, appellant pronounced that appellee's visitation in August will start on August 2 and end on August 15. Only appellee was permitted to pick up and drop off the children "with no substitutions accepted!" (Emphasis in the original.)[3]
Another handwritten letter by appellant dated July 2, 1998 states that visitation might be modified from July 19 from 3 p.m. through 12 p.m., July 26 with no excuses or exceptions for being late. These same restrictions applied to the paternal grandmother, and if she was late on July 6 in picking up the children, then appellee's visitation would be forfeited.[4]
We recognize that these letters were contrary to the provision of the standard order of visitation ordered by the court. Specifically, that order indicated that "[i]f the parties cannot agree on the times, visitation shall be a follows: The last two weeks in June * * * and the first two weeks in August * * *."[5] These letters not only demonstrated appellant's hostility and rigid attitude towards appellee, but also reflected a disregard for the default provision set out by the standard order of visitation plan.
Moreover, appellant's unrepentant and intransigent attitude during her testimony at the modification hearing corroborated the allegations of inflexibility and hostility. During the modification hearing, appellant admitted to denying appellee visitation on three or four occasions on the basis that he was allegedly using an improper car seat for the children.[6]
Although appellant had a car seat, she never volunteered to let appellee use it. Police reports were filed on two separate occasions due to these confrontations and later submitted into evidence at the modification hearing. One police report illustrates that appellant refused to permit appellee visitation with the children even though the police officer inspected appellee's car seat and stated in the police report that "it appeared to be a proper safety seat." In addition, the police officer met with appellant and advised her that the car seat was proper, but again noted in the police report that "she refused to let Mr. Headley take the two children" for visitation. Excerpts from the transcript of the modification hearing demonstrated that the worst case scenario was the child might be several pounds over the recommended weight for the car seat. The denied visitation dates were never allowed to be made up by appellee.
Further, appellant directed the children's mental health counselor, Jennifer Blackham, not to discuss the children's case with appellee even though the children were meeting with the counselor because they were having a difficult time adjusting to the divorce. Basically, the testimony provided by Jennifer Blackham demonstrates that appellant would not permit appellee to participate in the children's counseling:
 "Q. And did you inquire then if she [appellant] would permit Mr. Headley to participate in counseling?
 "A. I asked her if she would like me to speak to him and she said no.
 "Q. Was there a reason given why she didn't want you to talk to Mr. Headley?
"A. No.
 "Q. Did you ask Mrs. Headley to render a release so that Mr. Headley could participate or at least speak with you.
"A. Yes. I asked if she would sign one.
"Q. And what was her response?
"A. No."
 The rationale provided by appellant in withholding this medical information from appellee was that she did not want him interfering with the children's therapy.
Appellant's own testimony during the modification hearing shows her own awareness of a hostile attitude towards appellee. At one point, she testified that appellee needed to stay out of her life and believed that it was not his place to babysit the children while she worked overtime:
 "Q. You said you try to work some overtime. Have you ever asked Mark [appellee] or Jan [paternal grandmother] to watch the kids so you can work some overtime?
"A. No.
"Q. Why is that?
"A. Because it's not their place.
 "Q. Wouldn't the girls enjoy an extra visit with their dad or grandma?
 "A. They'd enjoy an extra visit with my family, too. But his mom and him have been living together all up until April 1st. It's like they're seeing everybody. Everybody is still in contact on that side, and my kids aren't seeing my family enough. So I'm going to give my family that kind of close and personal with them."
 Although the children expressed a desire to spend more time with their father, the trial court realized that this alone was insufficient to create a condition for a change of custody. However, given appellant's hostility towards both appellee and the parental grandparents, and her "reluctance and recalcitrance" in allowing appellee and the parental grandparent rightful visitation, the trial court determined that these situations warranted a change of residential placement.
We believe that it is a matter of a common sense interpretation of whether all of the above incidents could constitute a change of circumstance in the time frame of this case. Here, the nunc pro tunc judgment entry stated that the parents agreed to the concept of shared parenting. On that basis, the court designated appellant the residential parent with appellee having visitation in accordance with a slightly modified standard visitation order. Ultimately, a shared parenting planper se was never implemented.
Nevertheless, the divorce was granted with the court having the impression that a shared parenting plan would be implemented. The concept of shared parenting obviously requires a cooperative effort between the parents in accomplishing the goals of shared parenting. When the actions of one parent demonstrate that any such cooperation is not only lacking but it is being actively thwarted, the court is justified in determining that a change of circumstance has taken place.
Even if there had been no mention of shared parenting, the same principle applies. When the residential parent, unilaterally and inexcusably, seeks to cut out and exclude the other from contact with the minor children, a change of circumstance has taken place.
Based upon a review of the record, we cannot find that the trial court abused its discretion in determining that appellant's interference with visitation and hostility towards appellee constituted a change in circumstances. It is evident from the record that continuous problems existed with visitation and communication between appellee and the children. Appellant's increased hostility towards appellee frustrated the cooperation between the parties as to visitation and communication with the children. Moreover, the guardian ad litem's report and recommendation indicates that the children were well aware of appellant's hostile feelings towards appellee.
Second, we must determine if the trial court properly found that the change in circumstance necessitated modification in order to serve the best interests of the children. As previously noted, R.C. 3109.04(E)(1)(a) requires the court to find that a modification of the prior decree is in the child's best interest. Moreover, R.C. 3109.04(F)(1) provides that in determining the best interests of a child, the trial court must consider all relevant factors, including, but not limited to the following:
"(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
"* * *."
 The Supreme Court of Ohio has stated that "the best interest of a child encompasses not only the home environment, but also the involvement of both parents." Davis at 419.
 "When one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child is materially affected."
"* * *
 "Clearly, preventing a child from spending time with a caring and loving parent, as well as the hostility and friction generated by the disputes that arise over such issues, may be considered harmful to the best interest of a child." (Emphasis sic.) Id. at 419-420.
 Therefore, the trial court is entitled "to look at the issue of which parent was more likely to honor and facilitate visitation, and factor that issue into the best interest of the child." Id.
In the instant case, the trial court was presented with substantial evidence relevant to its inquiry under R.C.3109.04(F)(1). In its judgment entry, the trial court noted:
 "* * * that the modification is in the best interests of the children in that they should be allowed to establish better relationships with their father and their paternal grandparents, while still having reasonable contact with their mother through regular visitation. The Court believes the Plaintiff [appellee] will be more flexible and generous in allowing visitation with the Defendant [appellant]."
 Appellant has sought to interfere with, make difficult and prevent visitation to appellee. She also has prevented appellee in becoming involved in the children's mental health therapy, which focused on the children's ability to adjust to the divorce. Unfortunately, the children were aware of appellant's anger and hatred towards appellee, and such circumstances may be harmful to the best interest of the children. Even though appellee was in arrearage in his child support obligation, the trial court believed that he would be "more flexible and generous" in granting visitation to appellant than she had been with him and the grandparents.
The children have developed a good relationship with appellee, his new wife, and the paternal grandparents. Appellee has available to him a suitable home in which he may raise the children with his new wife. Moreover, the paternal grandparents are concerned about the well being of the children. The trial court emphasized that they will play a greater role as grandparents to the children with their son serving as the custodian because their role was limited by appellant's conduct. Thus, the trial court recognized that there would be better interaction between the parents and grandparents if custody was awarded to appellee.
We have no doubt that both parents love their children. But, the trial court properly considered the appropriate factors in determining that the best interest of the children warranted a modification in custody.
Lastly, we must examine if the trial court complied with R.C.3109.04(E)(1)(a)(iii) in concluding that the harm likely to be caused by the change of environment was outweighed by the advantages of the change of environment to the children.
As to this issue, the trial court determined that:
 "* * * [C]hange of environment is outweighed by the advantages of the change of environment to the children. It is better for the children that they are not reared in an environment where their custodial parent is hostile to the rights of the other parent and demeans the other parent."
 Upon review of the record, we cannot find that the trial court abused its discretion when it concluded that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children. The children were aware of appellant's hatred and anger towards appellee, and the trial court found that the environment provided by appellee would shelter the children from appellant's hostility in that "the children will not spend their time in an environment where hostility against one of their parents is displayed by their custodial parent." Further, appellee has available to him a suitable home in which he may raise the children with the aid of his new wife.
We are of the opinion that the trial court properly found a change in circumstance and considered the factors listed in R.C.3109.04(F)(1) in order to determine the best interest of the children. Also, in compliance with R.C. 3109.04(E)(1)(a)(iii), the trial court found that the harm likely to be caused by the change of environment was outweighed by the advantages of the change of environment to the children. Therefore, appellant's second assignment of error is not well-taken.
Based on the foregoing analysis, appellant's first and second assignments of error are meritless, and the judgment of the trial court is affirmed.
[1] The standard order of visitation plan dictates the following visitation schedule:
 "The non-residential parent shall be entitled to four weeks visitation during the child(ren)'s summer vacation from school. If the parties cannot agree on the times, visitation shall be as follows: The last two weeks in June, commencing June 17 and the first two weeks in August commencing August 1. * * *" (Emphasis added.)
[2] October 1997 represents the date when the parties were granted a divorce while March 1998 was the date appellee filed an emergency motion for temporary change of custody and designation of residential parent and legal custodian.
[3] The standard order of visitation plan provides that "[t]he non-residential parent has responsibility for picking up and returning the children. * * *"
[4] The standard order of visitation plan states the following with regard to waiting for the visiting parent:
 "The children and residential parent have no duty to await the visiting parent for more than 30 minutes of the visitation time. A parent who is late forfeits companionship for that period, unless there is an emergency."
[5] Appellant did include the first two weeks of August, specifically August 2 through the 15, in her letter; however the other two weeks were July 6 through 12 and July 20 through 26. The indicated dates did not allow seven day weeks, nor was there any mention of the additional fifth week as specified in the judgment entry.
[6] With regard to car seats, the standard order of visitation states the following: "For any and all children required by law to ride in a car seat, the parents shall transferthe car seat with the child as visitation exchanges occur." (Emphasis added.)