JOURNAL ENTRY AND OPINION
Plaintiff-appellant, Diane K. Doskoch, appeals the decision of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, which granted the motion of defendant-appellee, Charles Bruce Giffin, to modify custody and designate appellee as legal custodian and residential parent of the parties' nine-year-old daughter, Melissa. For the reasons that follow, we affirm the order of the trial court.
The parties married on June 22, 1985. Their daughter, Melissa, was born on July 1, 1990. The parties separated shortly after her birth and were subsequently divorced in Oakland County, Michigan in 1992. They were awarded joint legal custody of Melissa with physical custody to appellant. Appellee was ordered to pay child support and carry Melissa's health insurance. He was also to pay two-thirds of uninsured specified expenses set forth in the entry.
Despite language in the Michigan decree which required appellant to continue Melissa's domicile in Michigan unless a change was approved by the court, the parties moved to the Cleveland, Ohio area in 1993 after appellee secured employment in Ohio and arranged appellant's and Melissa's move to an apartment near to his. The move brought appellant and Melissa geographically closer to appellant's extended family, who live in the Cleveland, Ohio area.
Subsequent to this geographic shift, appellant became involved with Charles Turner, a police officer. Appellant and Turner purchased a house together and lived together for nearly three years. During this time, appellee lived nearby and visited with Melissa often. Although engaged to marry, appellant and Turner did not marry and their eventual breakup was unpleasant.
Appellant then moved with Melissa to the home of her mother and step-father, where she and Melissa lived in a third-floor suite. This move required that Melissa change schools before the end of the school term. While living at her parents' home, appellant attended college, supporting her daughter and herself on public assistance, child support, student loans, money she had saved and her parents' largesse. Appellant and Melissa moved out after approximately ten months, however, after appellant and her step-father argued about appellant's failure to assist her mother, who suffers from Parkinson's Disease, with the housework, and about damage to appellant's mother's car caused in an accident that occurred while appellant was driving the car without permission. Appellee, who had remarried, moved back to Michigan about this time.
Upon leaving her parents' home, appellant and Melissa moved to an apartment two buildings away from an apartment shared by her sister, Elizabeth Doskoch, and Elizabeth's boyfriend, Brett Gierok. During the evenings when appellant was at school, Elizabeth and Brett frequently provided child care for Melissa. Appellant no longer allowed Melissa to see her grandparents, however.
Appellant and Melissa lived at this address for approximately three months. In April 1998 they moved in with Terry Neff, appellant's fiance. This move required that Melissa again change schools before the end of the school year.
In April 1998, appellee filed a motion with the Michigan court to change the custody order and have Melissa live with him. Neil Evans (appellant's stepfather), Marian Evans (appellant's mother), Elizabeth Doskoch, and Brett Gierok wrote letters in support of appellee's motion. At the hearing, Elizabeth Doskoch testified that as a consequence of the letters, appellant did not allow Melissa to associate with any family members.
In June 1998, appellant filed a motion to determine jurisdiction and a motion to modify the prior parenting and visitation order in Ohio. On January 5, 1999, the parties entered into an agreed judgment entry consolidating appellee's motion for change of custody with the other motions and granting appellant's motion to determine jurisdiction to the extent that Ohio would exercise jurisdiction regarding the issues of custody and visitation. By agreed entry journalized January 22, 1999, the parties also agreed to submit to a psychological evaluation by Dr. Donald Weinstein. Subsequently, appellant retained Dr. Robert Erikson to evaluate her mental health status.
In July 1999, appellant filed a motion asking that Melissa be presented to the court for an interview. In August 1999, the court granted appellant's motion and appointed Susan M. Weaver as guardian ad litem for the child. The magistrate interviewed Melissa on August 11, 1999.
In August, 1999, the trial court held a six-day hearing at which twelve witnesses, including both parties, testified. On August 26, 1999, Magistrate Barbara Hall issued a seventeen-page Civ.R. 53(E)(4)(c) decision with findings of fact and conclusions of law denying appellant's motion to modify the prior parenting and visitation orders, and granting appellee's motion to modify custody. On January 10, 2000, the trial court overruled appellant's objections to the magistrate's decision and the interim order entered on August 26, 1999 was made a final judgment of the court.
Appellant timely appealed, assigning three errors for our review. Appellant's first and second assignments of error, which we consider together, state:
 I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THERE HAS (SIC) BEEN A CHANGE IN CIRCUMSTANCES IN THE MINOR CHILD'S LIFE SINCE THE PRIOR COURT ORDER REGARDING HER PARENTING.
 II. THE TRIAL COURT ERRED IN MODIFYING CUSTODY IN THAT SAID DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE FACTORS SET FORTH IN ORC S3109.04(F)(1).
Initially, we note that the discretion of a trial court in deciding child custody issues is quite broad and is to be given the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418.
In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were correct. Miller, supra. Moreover, where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by the reviewing court. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
The power of a trial court to modify an existing custody decree is provided in R.C. 3109.04(E)(1)(1), which states:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and * * *:
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
A trial court essentially applies a three-part test in determining whether a modification of child custody is appropriate. The test is: 1) whether there has been a change in circumstances; 2) whether a modification is in the best interest of the child; and 3) whether the harm resulting from the change will be outweighed by the benefits. See In re Kennedy (1994), 94 Ohio App.3d 414. Unless the record supports an affirmative answer to each question, the modification is not appropriate under R.C. 3109.04(E) and is contrary to law. Id.
R.C. 3109.04(F)(1) provides that in determining whether a modification is in the best interest of a child, the trial court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) * * * the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, * * *
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense * * *;
 (i) Whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence * * * outside this state.
In her first assignment of error, appellant contends that the trial court erred in deciding that there had been a change of circumstances since the original decree was issued. According to appellant, there was no evidence presented that appellant had a good relationship with her family at the time of the divorce and, therefore, there was no basis for the magistrate to conclude that the estrangement between appellant and her family, which occurred after the parties' divorce, was a change in circumstances. We disagree.
The record clearly reflects that appellant and Melissa had a good relationship with appellant's mother, appellant's sister and her sister's boyfriend for some time after the divorce. Indeed, appellant and Melissa lived with her parents for a period of time after the divorce and her parents provided some measure of financial support to appellant and Melissa. Furthermore, Liz Doskoch and Brett Gierok often babysat for Melissa in the evening when appellant was attending school. These are not the actions of people who are estranged from each other. Thus, appellant's subsequent refusal to allow Melissa to associate with her grandparents and her aunt was clearly a change in circumstances. pursuant to R.C. 3109.04(E)(1)(a).
Appellant also contends that her many relocations after the divorce were not a change in circumstances sufficient to justify a change in custody because there was no evidence to suggest that Melissa was adversely impacted by the moves. Rather, appellant contends, the magistrate concluded in her report that Melissa has had several homes and has apparently adapted well to each of them. * * * Melissa has made friends wherever she has lived. * * * She has won various merit awards in school and appears from the report card in evidence (third grade) to be an average to above average student.
Appellant's argument is not well-taken. Appellant's many moves obviously created a constant change of circumstances in Melissa's life. Melissa attended three different schools in the first three years of her formal elementary school education. Moreover, in the seven years after the divorce, she moved five times. In addition, the father-figures in the households she lived in changed several times. These are clearly changes of substance. sufficient to warrant further inquiry into the best interest of the child, the second part of the three-part test in determining whether a change in custody should be made. See Davis, supra at 418.
That inquiry, as appellant correctly points out, requires the trial court to consider the factors set forth in R.C. 3109.04(F)(1). In her second assignment of error, appellant contends that the trial court's decision to change custody was against the manifest weight of the evidence and contrary to the factors set forth in R.C. 3109.04(F)(1). We disagree.
With respect to factor (a), the wishes of the parents, the evidence showed that each parent sought to be designated residential parent and legal custodian of Melissa.
With respect to Melissa's wishes, as communicated to the court, the evidence showed that Melissa was very positive about her mother and very clear that she would miss her if she was away from her. Melissa also expressed frustration with her father's continued pursuit of residential placement and indicated that she wanted to spend less, rather than more, time with her father. As Dr. Weinstein testified, however, Melissa's ideas may have been reinforced by appellant's comments to her and his observations of Melissa's interaction with her father while in Michigan did not correspond to Melissa's comments. Nonetheless,. the trial court noted, it must be with very great caution that the court approach separation of Melissa from her mother. Regardless of how she has come to commit to her present expressions, they are her present reality.
The record (five volumes of testimony totaling one-thousand twenty four pages) reflects that the trial court heard voluminous testimony concerning factor (c), Melissa's interactions and interrelationships with her parents, siblings, and significant others, etc. Appellant contends, however, that the trial court ignored evidence that she was very involved in a variety of activities with her daughter, including attending school activities, helping Melissa with her homework, camping, going to the library, shopping and riding bikes together. In addition, appellant's witnesses, Pat Woodward and Penni Rolen, testified to the positive interactions they had seen between appellant and her daughter. In contrast to this evidence, appellant contends, there was virtually no evidence presented to the court regarding appellee's interaction with his daughter. In addition, appellant asserts, there was no evidence presented that her relationships with Charles Turner and Terry Neff, about which the trial court expressed concern, were detrimental to Melissa's well-being. Finally, appellant contends that the trial court ignored the valid reasons for her estrangement from her family (Elizabeth's drinking, her step-father's abusiveness and the letters her family wrote in support of appellee's motion to change custody).
Appellant's arguments are not well-taken. First, the trial court specifically considered the testimony of appellant's witnesses, noting in its decision that appellant is described as perfect not only by Melissa but by friends and acquaintances of Ms. Doskoch. There was also testimony regarding appellee's interaction with Melissa. Elizabeth Doskoch testified that she had observed Melissa with appellee and considered him a good father. Appellee testified that he love[d] [his] daughter tremendously. Furthermore, the trial court noted that Dr. Weinstein testified that his observations of Melissa with appellee indicated that she was attached to both appellee and his wife, Kathleen.
Furthermore, the evidence indicated that appellant's relationships with Turner and Neff were indeed detrimental to Melissa. As the trial court stated regarding Neff:
 While [appellant] presently sees him as loving and supportive, other testimonial descriptions are not so kind. Evidence is uncontroverted that he engaged in efforts to intimidate, pressure and threaten participants in the present litigation. Though it was stipulated that there is no evidence that Mr. Neff has been arrested or convicted in connection with incidents described, a collection of police incident reports was admitted. Perhaps the best description of Mr. Neff based on all evidence before the court is that he is an individual whom reasoned solutions evade, that he is aggressively provocative and confrontational. That none of this has been directed yet at Ms. Doskoch is less than reassuring. Meanwhile, Mr. Neff too has become part of the fabric of Melissa's life and another of her father figures.
With respect to Turner, the trial court noted that Mr. Turner shows evidence of psychological impairment, though the court will not attempt to guess its cause. It is obviously not new. Even without an expert evaluation of Mr. Turner in this proceeding, his demeanor on the witness stand would have caused concern. As the trial court also noted, Turner, like Neff, became part of the fabric of Melissa's life and at least one of her father figures.
Finally, although appellant contends that her estrangement from her family was a logical consequence of their support for appellee in his attempt to become Melissa's residential parent, the trial court properly noted that appellant assuaged her anger by depriving her daughter,. to Melissa's obvious detriment, of any relationship with her family. Furthermore, there was evidence that appellant then attempted to manipulate her family for her own ends by promising them a relationship with Melissa. For example, as the trial court noted, after more than a year during which Melissa did not see her grandmother, appellant allowed Melissa to see Mrs. Evans twice in the last month of the pendency of this litigation. Though Mrs. Evans had written a letter to the Michigan court expressing her support for appellee, in one of these visits, appellant authored and typed a new letter for her, stating that it was now Mrs. Evans' opinion that in no uncertain terms do I agree that Bruce Giffin should be granted custody * * *. Mrs. Evans testified, however, that she was torn. between the two parties and did not think that she was qualified to say which party should have custody of Melissa. Thus, as the trial court stated, the picture that emerges is one of [appellant] using the promise of a relationship with Melissa to manipulate others for her own ends, whether or not Melissa's needs correspond.
Appellant contends that with respect to factor (d), the child's adjustment to home, school and community, the trial court failed to properly consider that Melissa had adapted well to the homes that she lived in and the schools she attended and that she had close friends from school and the neighborhood that were important to her. We disagree. As evident from the trial court opinion, the trial court noted that Melissa had, in fact, adjusted well to her several homes and schools. On the other hand, the court also observed that Dr. Weinstein testified that when he visited Melissa at appellee's home in Michigan, she appeared to be well-adjusted, described for him the friends she had there and engaged in play.
Evidence of the parties' mental and physical health, factor (e), was presented to the court by way of written reports and expert testimony from Dr. Donald Weinstein and Dr. Robert Erickson. Dr. Weinstein testified that appellant has Borderline Personality Disorder and recommended that Melissa be removed from appellant's home, although he testified that his recommendation regarding Melissa's care did not depend upon a formal diagnosis of appellant's mental condition. Dr. Erickson, on the other hand, testified that he does not believe that appellant has Borderline Personality Disorder, nor any other diagnosable mental disorder, and that Melissa was a well-adjusted nine-year-old child. He recommended that Melissa not be removed from appellant's home.
Dr. Weinstein testified that one of the criteria for a formal DSM-IV diagnosis of Borderline Personality Disorder is a pervasive pattern of instability of interpersonal relationship[s]. He testified that appellant had a lengthy history of unstable relationships with men, beginning as early as age sixteen, when she moved out of her parents' home to live with a young male and his father.
Appellant contends that the trial court erred in admitting such testimony, however, because the relationships that Dr. Weinstein testified about spanned a time-frame of over twenty years. Appellant also contends that Dr. Weinstein's testimony regarding appellant's alleged history of unstable relationships should be discounted because Dr. Erickson testified that there was nothing in appellant's history that would indicate a series of unstable relationships. as defined in the DSM-IV criteria. Finally, appellant contends that the trial court improperly considered Dr. Weinstein's assessment that appellant and Melissa had an unhealthy relationship in which appellant and Melissa had reversed roles, and Melissa had assumed responsibility for mothering and nurturing appellant. Appellant contends that Dr. Erickson testified that he did not observe any such relationship between appellant and Melissa but, rather, that appellant and Melissa were acting in a normal way to deal with a stressful situation, i.e., the possible removal of Melissa from appellant's home.
Appellant's arguments are without merit. First, Dr. Erickson's testimony regarding the lengthy history of appellant's past relationships was relevant because it demonstrated appellant's long-standing inability to maintain stable relationships over any significant period of time. Thus, the testimony was properly admitted. Moreover, as noted in its opinion, the trial court carefully considered the discrepancies between Dr. Weinstein's and Dr. Erickson's testimony. The trial court also noted, however, that the only expert to have seen Melissa in both her homes and to have interviewed and observed both her parents (and stepmother) is Dr. Weinstein. The court noted further that Dr. Weinstein described himself as a person who is not over reactive, but nonetheless extremely concerned about Melissa. He believes that Diane Doskoch is emotionally disturbed * * * [and] he cites signs and symptoms in Melissa as a result.
With respect to factors (f) and (i), the parent more likely to honor and facilitate visitation and whether there had been continuous and willful denial of ordered visitation, the trial court noted that both parties had acted in ways to undermine Melissa's visits with the other parent.
With respect to factor (g), child support compliance, the trial court noted that appellee had not paid his ordered child support at predictable times or in reliable amounts. The trial court also noted, somewhat incredulously, that although appellee had maintained medical insurance coverage for Melissa as ordered, he had neglected to inform appellant of such coverage and, as a result, Melissa's medical needs were at times covered by public assistance.
The trial court noted that neither parent has been convicted of or pled guilty to any charges of domestic violence or child abuse, factor (h).
Finally, with respect to factor (j), an out-of-state residence, the trial court noted that the geography of this case cannot be minimized. The trial court noted that the long distance between the parties would complicate the coordination of visits between appellant and Melissa and that, even though appellee testified that he recognized the importance of maintaining contact between Melissa and her friends and extended family in Ohio, there was no real way to measure appellee's commitment to make arrangements to enable Melissa to visit them.
Upon consideration of these factors, the trial court determined that a modification of the prior decree was in Melissa's best interest. Further, the trial court determined that any harm resulting from the change would be outweighed by the benefits to Melissa. Accordingly, the trial court designated appellee as Melissa's custodial and residential parent.
In light of the discretion afforded the trial court in custody matters, we cannot conclude that the trial court's decision was against the manifest weight of the evidence or contrary to the factors set forth in R.C. 3109.04(F)(1). As the trial court stated in its opinion, Obviously Melissa's parents have seriously different opinions of what is best for her, but * * * each approaches this question with love for the child. Justice Resnick's dissent in Pater v. Pater (1992),63 Ohio St.3d 393, 403, ably sums up the scenario in this case:
 It is the role of a trial judge at a custody hearing to consider all relevant factors, and then reach a decision. That decision is based primarily on the best interests of the child, with all other concerns of secondary importance. Because the trial judge is in the best position to evaluate the child's best interests, a reviewing court should accord great deference to the decision of the trial judge. In this case, the trial judge considered all the relevant factors, and made a decision in a difficult situation involving two conscientious and loving. parents.
Appellant's first and second assignments of error are overruled.
 III. THE COURT ABUSED ITS DISCRETION BY AWARDING LIMITED VISITATION TO THE PLAINTIFF.
In her third assignment of error, appellant contends that the trial court abused its discretion by awarding her limited visitation with Melissa.
Pursuant to the order of the trial court, during the first three months after Melissa moved to Michigan, appellant was to visit Melissa only in Michigan and her visits were to be monitored (if not directly supervised) by Melissa's therapist. At the conclusion of this three-month period, the parties were ordered to meet with Melissa's therapist and to be guided by the reasonable recommendations of th[e] therapist regarding whether limitation to Michigan shall continue or whether other limitations may be required. At such time as Melissa's therapist reported that Melissa's adjustment permitted it, the court-ordered visitation schedule set forth in the trial court's order was to commence.
Appellant contends that the trial court abused its discretion by: (1) limiting appellant's contact with Melissa during the first three months after she moved to Michigan; (2) allowing Melissa's therapist to determine, after the first three months, whether visitation should continue to be limited to Michigan or whether other limitations should be imposed; (3) ordering a visitation schedule that provides for less visitation than a Standard Visitation Schedule; (4) failing to consider the factors regarding visitation rights set forth in R.C. 3109.051(D); and (5) ordering that, as recommended by Melissa's therapist, appellee could monitor appellant's written and telephone contact with Melissa. Appellant's arguments are without merit.
Our review of the record indicates that the trial court's visitation order was based on the recommendation of Dr. Weinstein, who testified extensively regarding what visitation arrangements would be in Melissa's best interest. Furthermore, our review of the trial court order indicates that the trial court specifically considered the factors set forth in R.C. 3109.051(D) regarding visitation rights.
The term abuse of discretion. connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 122. Here, the trial court's order regarding appellant's visitation rights with Melissa was consistent with the recommendations of the independent expert and Melissa's best interests. Furthermore, there was ample evidence to support the trial court's order. Accordingly, we find nothing unreasonable, arbitrary or unconscionable about the trial court's order.
Appellant's third assignment of error is, therefore, overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and MICHAEL J. CORRIGAN, J., CONCUR.