[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 415.]

DAVIS, N.K.A. BAKER, APPELLEE, *v*. FLICKINGER, APPELLANT.

[Cite as *Davis v. Flickinger*, 1997-Ohio-260.]

*Domestic relations—Children—Custody—R.C. 3109.04 requires a finding of a "change in circumstances," not a substantial change--In determining whether change in circumstances has occurred so as to warrant change in custody, trial judge must be given wide latitude to consider all issues affecting best interests of a child.*

1.  R.C. 3109.04 requires a finding of a "change in circumstances." Such a determination when made by a trial judge should not be disturbed, absent an abuse of discretion.

2.  In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change.

(No. 95-2208—Submitted November 12, 1996—Decided February 12, 1997.)

APPEAL from the Court of Appeals for Tuscarawas County, No. 94AP110077.

————————————

{¶ 1} Plaintiff-appellee Melissa Lin Davis, n.k.a. Melissa Lin Baker, and defendant- appellant Dwayne Kevin Flickinger met sometime in 1986 and dated for about five years. During that relationship, an out-of-wedlock son named Dylan Kevin Flickinger was born on April 26, 1989. Flickinger has always acknowledged paternity of Dylan. Flickinger and Davis have never resided together.

{¶ 2} When Davis returned to work after Dylan was born, Flickinger kept and cared for Dylan during the day. This was still the arrangement up to the time of the August 1994 hearing. Flickinger had birthday parties for Dylan, took him skiing, sailing, swimming, and horseback riding, and to Sea World, the park, and the library. Flickinger also placed Dylan in a preschool program. When Dylan

was in the care of Davis, she provided a similarly rich environment. Specifically, Davis took Dylan to parks, family reunions, and church. The family barbecued, went boating and fishing, and played baseball, soccer, and educational games.

{¶ 3} When the romantic relationship between the parties waned, Davis filed a paternity action. Pursuant to Flickinger's acknowledgment, the trial court formally established paternity on June 1, 1992. On October 7, 1992, the trial court, over Flickinger's objection, named Davis the residential parent and legal custodian, and granted Flickinger liberal visitation. At first, communications and visitation remained flexible and satisfactory. However, when Davis married Rick Baker in November 1993, the relationship between the parties deteriorated, and Flickinger and Davis's husband had several confrontations. After the marriage, Davis permitted her new husband to increasingly handle visitation issues. Davis filed a motion to terminate visitation on December 22, 1993, three days before Christmas and within a month of her marriage to Rick Baker. In January 1994, Flickinger filed a motion to modify visitation. Eventually, Davis denied Flickinger visitation on Father's Day, Memorial Day, and other occasions in 1994. Dylan began kindergarten in August 1994, making compliance with the original schedule of visitation impossible.

{¶ 4} The trial court held a three-day hearing, at which more than twenty witnesses testified. On October 24, 1994, the trial judge issued an eleven-page opinion denying Davis's motion to terminate visitation, granting Flickinger's motion to modify custody, and designating Flickinger as the residential parent. The trial court found that the new school schedule and the conflict that had developed between the parties constituted a change of circumstances sufficient to warrant an inquiry into whether the best interest of the child would be served by a change of custody. Further, the trial court found that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to

2

the child.  Accordingly, after examining the factors listed in R.C. 3109.04 (F)(1), the court ordered a change of custody from Davis to Flickinger.

{¶ 5} On September 19, 1995, the Court of Appeals for Tuscarawas County, in a split decision, reversed and remanded.  The appellate court  found that the testimony did not rise to the level of a substantial change of circumstances and that the trial court had abused its discretion and committed a mistake of law. Specifically, the appellate court found that the school schedule and the conflict between the parties did not constitute a *substantial* change of circumstances.  This cause is now before this court pursuant to the allowance of a discretionary appeal.

*Day, Ketterer, Raley, Wright & Rybolt*, *Raymond T. Bules* and *Jill Freshley Otto*, for appellee.

*Keith McNamara*, for appellant.

_____

**LUNDBERG STRATTON, J.**

{¶ 6} R.C. 3109.04 requires a finding of a "change in circumstances."  Such a determination when made by a trial judge should not be disturbed, absent an abuse of discretion.  In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in circumstances because of a child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues.

{¶ 7} Because we find that the trial judge did not abuse his discretion in finding a change in circumstances sufficient to warrant a change of custody, we reverse the court of appeals and reinstate the order of the trial judge awarding custody to Dwayne Flickinger.

{¶ 8} First, we must analyze the meaning and legislative intent of R.C. 3109.04 in requiring a "change in circumstances."  R.C. 3109.04(E)(1)(a) provides:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, *that a change has occurred in the circumstances of the child*, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"(i)     The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

"(ii)     The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

"(iii)     *The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child*." (Emphasis added.)

{¶ 9} Lower courts have varied widely in their interpretation of the meaning of "change in circumstances," some requiring the change to be "substantial." *Perz v. Perz* (1993), 85 Ohio App.3d 374, 619 N.E.2d 1094. Chief Justice Moyer, while on the Tenth District Appellate Court, stated: "'The changed conditions, we stress, must be substantiated, continuing, and have a materially adverse effect upon the child. The latter is the paramount issue.'" *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 483, 445 N.E.2d 1153, 1157, quoting *Wedren v. Wedren* (Aug. 27, 1974), Franklin App. No. 74AP-103, unreported. The *Wyss* case required the change to be "substantiated" rather than "substantial." However, R.C. 3109.04 requires only a finding of a "change in circumstances" before a trial court can

determine the best interest of the child in considering a change of custody. Nowhere in this statute does the word "substantial" appear.

{¶ 10} In this case, the court of appeals clearly took an approach of requiring a "substantial" change. The term "substantial" appears repeatedly throughout its opinion and always in conjunction with "change." In doing so, the court of appeals appeared to require a higher burden of proof than required by statute. In reality, however, the court of appeals merely seems to substitute its judgment for that of the trial bench, rather than deciding the case on an abuse of discretion standard.

{¶ 11} Clearly, there must be a <u>change</u> of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change. The nomenclature is not the key issue. As the <u>Wyss</u> court aptly stated:

"The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." *Wyss*, 3 Ohio App.3d at 416, 3 OBR at 483, 445 N.E.2d at 1157.

{¶ 12} In determining whether a "change" has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her—including many of the factors in this case—and such a decision must not be reversed absent an abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846.

{¶ 13} The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261,

376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:

"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey* v. *Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E. 2d 772, approved and followed.)"

{¶ 14} The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *

"* * *

"* * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

{¶ 15} This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well.

**{¶ 16}** Turning to the facts of this case, the record reflects that the trial in this matter lasted three days, with numerous witnesses and over eight hundred pages of testimony. There is no doubt that the child was well cared for in each home, and both parents provided a loving, nurturing environment. This court fully recognizes the contributions made by the mother as well as the father. But the best interest of a child encompasses not only the home environment, but also the involvement of both parents. In today's society that fully admits the need for parenting by both parents, each parent should have full involvement in a child's life, where possible and desired by the parent. When one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child *is* materially affected.

**{¶ 17}** In this case, the mother complains that the father wanted to keep the child overnight occasionally and that it was not in their agreement, which hardly seems an unreasonable request. The real conflict clearly began with the appearance of Richard Baker. Shortly after her marriage to Baker, Davis filed a motion, cruelly timed for December 22, 1993, to terminate *all* visitation. To ask to *totally end* a child's relationship with a heavily involved and obviously caring parent demonstrates, on the part of the mother, a clear disregard for the best interest of the child.

**{¶ 18}** While a new marriage, alone, usually does not constitute a sufficient change in circumstances, a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation, may be an unforeseen change in circumstances warranting further inquiry into the best interest of the child. In addition to the factors noted by the trial court, this court also finds that the mother's filing of the motion to terminate all visitation added to the hostility and could be considered by the court in evaluating the best interests of the child.

**{¶ 19}** In addition, the court could consider the change in circumstances created by the maturing of the child. Again, age alone is not a sufficient factor. See *Perz*, 85 Ohio App.3d 374, 619 N.E.2d 1094. However, even a small change in age, which requires a major adjustment to previous visitation or custody arrangements, when combined with hostility between the parents that adversely affects the visitation or custody arrangement, may constitute a sufficient change of circumstances to warrant a change in custody.

**{¶ 20}** Clearly, this custody arrangement was designed for a child that did not yet attend school. The court and all parties recognized that that arrangement would no longer work, yet the mother and her new husband seemed opposed to working out a visitation schedule that would give the father sufficient weekends or overnight visits to substitute for his previous schedule. Again, the judge was entitled to consider not only the change in circumstances caused by the child going to kindergarten, but also the residential parent's unwillingness to provide any substitute arrangements that would enable the nonresidential parent to spend as much time with the child as before the child was in kindergarten.

**{¶ 21}** Therefore, it was not necessarily the age of the child that was the key factor, but rather the parents' reaction in dealing with the changes brought by the child growing up and beginning to attend kindergarten. The court was entitled to look at the issue of which parent was more likely to honor and facilitate visitation, and factor that issue into the best interest of the child. Clearly, preventing a child from spending time with a caring and loving parent, as well as the hostility and friction generated by the disputes that arise over such issues, may be considered harmful to the best interest of a child.

**{¶ 22}** Justice Resnick's dissent in *Pater v. Pater* (1992), 63 Ohio St.3d 393, 403, 588 N.E.2d 794, 802, ably sums up the scenario in this case:

"It is the role of a trial judge at a custody hearing to consider all relevant factors, and then reach a decision. That decision is based primarily on the best

interests of the child, with *all* other concerns of secondary importance. Because the trial judge is in the best position to evaluate the child's best interests, a reviewing court should accord great deference to the decision of the trial judge. In this case, the trial judge considered all the relevant factors, and made a decision in a difficult situation involving two 'conscientious and loving' parents." (Emphasis sic.)

{¶ 23} With respect to the review by the appellate court, the majority below reversed the trial judge because it did not find a "substantial" change in circumstances, when in reality, it merely substituted its judgment for the trial court's. While we do not want to subject children to tug-of-war between two parents continually attempting to gain custody, we must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it is necessary for the best interest of the child. R.C. 3109.04(E)(1)(a) requires "that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree." Thus, the appellate court's requirement of a "substantial change of circumstances" was in reality a substitution of judgment, although the appellate court indicated that the basis for its reversal was the trial court's abuse of discretion. We find no such abuse of discretion by the trial court. A trial court judge has the power to exercise broad discretion in custody proceedings. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774; *Gardini v. Moyer* (1991), 61 Ohio St.3d 479, 484, 575 N.E.2d 423, 427.

{¶ 24} The record reveals that Dylan has been blessed with two decent and loving parents. However, the trial judge found that a change in the circumstances of the child necessitated modification in order to serve the best interest of the child. The trial judge properly considered the factors in R.C. 3109.04(F)(1) to determine the best interest of the child. Finally, in compliance with R.C. 3109.04(E)(1)(a)(iii), the trial judge found that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the child.

Therefore, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS and COOK, JJ., concur in the syllabus and judgment only.

PFEIFER, J., dissents.

————————