OPINION
In this accelerated calender case, Russell Neale appeals from the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, denying his motion to change custody of his minor son, Kevin, d.o.b. October 27, 1988. The evidence at the April 15, 1997 hearing on the matter can be summarized as follows.
Russell's ex-wife, Colleen Neale, n.k.a. Obradovich, was given custody of Kevin in a 1990 dissolution decree. Since then, Colleen has remarried to David Obradovich, who had two children from a prior marriage. Colleen and David have had an additional two children together, Connor and Ethan. Colleen, David, Kevin, Connor and Ethan all live together in a house in Warren. Colleen is laid off from her job as an x-ray technician at Warren General Hospital. David is a self-employed roofing and paving contractor, and teaches an in-school suspension program at Howland High School where he tutors students with disciplinary problems.
The most serious accusations at the custody hearing involved David's three convictions for domestic violence. Colleen described these incidents as "arguments" that went too far. The first occurred on August 25, 1994, before she and David were married. They had a fight and Colleen called the police after David apparently broke down the bathroom door where she had secluded herself. Kevin was at Russell's mother's house during the argument. No one was physically harmed. David was fined and was placed on non-reporting probation. The second incident occurred on April 6, 1996. Again, Colleen called the police during an argument. It is unclear from the record where Kevin was during the dispute. David was fined and was again placed on probation. He served five evenings in a work-house and began attending the Domestic Violence Program at Valley Counseling. The third incident occurred on August 13, 1996. Colleen and David were arguing. David threw some furniture out of the house. Colleen went outside and banged David's truck with her fist. David came out of the house and, while trying to pull her away from the vehicle, he inadvertently pulled her hair. Neighbors called the police, and both David and Colleen were arrested. Again, it is unclear where Kevin was during the ruckus. David and Colleen were both fined. Neither of them deny that they have had marital problems in the past, but they claim they have put these difficulties behind them. David continues to attend anger counseling sessions and Colleen says all has been quiet since August 1996. Both report their marriage as being currently stable.
David and Colleen have purchased a home in Maryland and harbor vague plans to relocate there one day. In August 1996, they filed a motion for leave of court to remove Kevin's residence from Ohio. The motion was ultimately denied. The house in Maryland stands vacant, and Colleen still wishes to relocate her family if the court ever gives her permission to move.
Also, Kevin has been diagnosed with Attention Deficit Disorder and takes Ritalin three times a day. He requires extra supervision at home and has some behavioral problems at school, but his grades are satisfactory. Other than this, he is a happy and well-adjusted young man.
Russell Neale has also remarried. Lisa, his current wife, is a registered nurse at St. Elizabeth's Hospital. The Neales have a stable marriage and maintain a home in Hubbard, Ohio. Russell says he sought the modification in custody not because of the domestic violence incidents, but because of the motion to relocate Kevin to Maryland. He fears he will not be able to see the boy as often as he does now.
Upon this evidence, the trial judge concluded that "while there have been changes in the lives of the parties since the last Order of Custody, the change is not of such significance to affect the best interest of the child." Accordingly, she denied Russell's motion for custody of Kevin.
On appeal, Russell asserts one assignment of error: "The Trial Court's verdict was against the manifest weight of the evidence." Colleen has not filed an appellee's brief.
In an attempt to show "how far afield" the judge in this case has gone, Russell has submitted another judgment entry from an unrelated case, Pickard v. Pickard, Case No. 47687, in which the trial judge granted Cynthia Pickard's motion to change custody. This entry is attached to Russell's appellate brief as an exhibit, and he invites us to compare the judge's actions in this case with her actions in the Pickard case. We refuse to consider thePickard entry because it is not a part of the record in this appeal, and appellants may not supplement the record with such materials in appendices to their appellate briefs. Papadelis v.First Am. Sav. Bank (1996), 112 Ohio App.3d 576, 581.[1]
We begin our analysis of the merits of this appeal with the familiar principle that matters of custody are committed to the sound discretion of the domestic relations court; we will not reverse its decisions on these matters unless it can be said the court abused that broad discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418. "The term `abuse of discretion' connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
R.C. 3109.04(E)(1)(a) sets forth a three-pronged test for determining whether a motion to modify custody should be granted, under which the moving party must establish: (1) a change of circumstances has occurred since the last custody order; (2) a modification of custody would serve the best interests of the child; and (3) the harm caused by the change in living arrangements is outweighed by the advantages of the proposed modification. Sickinger v. Sickinger (Apr. 5, 1996), Ashtabula App. No. 95-A-0046, unreported, at 6.
Russell misconstrues the trial court's judgment entry, wrongly asserting in his appellate brief that the court did not find that a change in circumstances had occurred here. The court wrote in its judgment entry that "there have been changes in the lives of the parties since the last Order of Custody[.]" We take this as a finding that a change in circumstances has occurred for the purposes of the first prong of the test in R.C. 3109.04(E)(1)(a). In the latter half of this sentence, the court stated: "the change is not of such significance to affect the best interest of the child." We take this as a finding that a modification of custody would not be in Kevin's best interest, and that, therefore, Russell failed to meet the second prong of the test in R.C.3109.04(E)(1)(a). We will focus our review upon this latter aspect of the court's judgment.
When a trial court is determining the best interests of the child, R.C. 3109.04(F)(1) requires it to consider all relevant factors, including, but not limited to:
 "(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
The inquiry should be guided, however, by a strong presumption in favor of maintaining the status quo. Schiavone v. Antonelli
(Dec. 10, 1993), Trumbull App. No. 92-T-4794, unreported, at 6. The movant seeking a change in custody bears the heavy burden of producing evidence relating to the above factors that is sufficient, in the trial court's judgment, to overcome the presumption that custody should remain the same. See id. at 14.
Some of the evidence at the hearing militated in favor of Russell. He expressed a fervent desire to be Kevin's residential parent. He testified that he and Lisa have a good relationship with Kevin. They have plenty of room for him at their home in Hubbard. Lisa is a registered nurse and may be able to better monitor Kevin's medication. Both Russell and Lisa expressed concerns over Colleen's parenting skills, accusing her of dressing Kevin in shabby, soiled clothing. David and Colleen are planning to establish a residence in Maryland, and it may be better for Kevin to stay in Ohio. And, most significantly, both David and Colleen have been convicted on charges of domestic violence. It would appear that David has problems controlling his anger, and that he and Colleen are prone to boisterous argument. In contrast, Russell and Lisa seem to offer a more stable and peaceable living environment.
Other evidence at the hearing militated in favor of Colleen. She also expressed a fervent desire to keep Kevin. She has an excellent relationship with her son, being closely involved in his schooling and extra-curricular activities. David likewise has an excellent relationship with Kevin. He and Colleen frequently take Kevin, Connor and Ethan on family outings to Geauga Lake, Sea World, and the like. Kevin gets along well with his half-brothers in the Obradovich household, and such interaction benefits his social skills. He would have no companions if he lived with his father. David's occupation as a counselor of youths with disciplinary problems gives him the experience necessary to deal with Kevin's behavioral problems associated with his Attention Deficit Disorder. Despite the disorder, Kevin has managed to keep his grades up. Colleen has never denied Russell court-ordered visitation. David and Colleen frankly admitted their problems in dealing with each other in the marriage, and David is attending anger management counseling. There was no evidence that the previous difficulties between his mother and step-father had any adverse impact on Kevin. By all accounts, he is happy and well-adjusted right where he is.
The facts of this case remind us that "`custody issues are some of the most difficult and agonizing decisions a trial judge must make.'" Gregg v. Gregg (Nov. 21, 1997), Portage App. No. 96-P-0263, unreported, at 7, quoting Davis, supra. After reviewing the whole record, we cannot say the trial judge abused her discretion when she decided that Russell's evidence did not overcome the presumption that Kevin should remain with Colleen. Accordingly, we will defer to her decision.
The assignment of error is overruled, and the judgment is affirmed.
ROBERT A. NADER, JUDGE.
FORD, P.J., and CHRISTLEY, J., concur.
[1] Even if the Pickard entry were properly part of the record of this case, we would not be persuaded to reverse. The child in Pickard was 13 1/2 years old and decided that she did not want to live with her father, the custodial parent under the decree. That child's wishes, an element not present here, was the predominating factor in the judge's decision to grant the mother's motion to change custody. ThePickard case is distinguishable, and therefore does not indicate that the trial judge makes these decisions arbitrarily.