{¶ 55} I concur with the majority's resolution of the second and third assignments of error only due to this court's limited standard of review. While I do not dispute the definition or standard to determine cohabitation, I caution that this case should not be cited as precedent establishing the absence of cohabitation because I disagree with the trial court's determination.
 {¶ 56} The court in this case was presented with considerable facts relating to cohabitation between Lisa and Tusing. Specifically, evidence was presented of Tusing frequently spending the night at Lisa's home; which was confirmed by Lisa and Tusing, although they claim it was less frequent. Moreover, the majority notes evidence of Tusing driving Lisa's car, taking garbage cans into Lisa's garage, carrying groceries, and staying at home while Lisa ran errands. Further, Lisa and Tusing denied financial comingling. The majority in this case held, "[t]here is no evidence in the record of financial support flowing between Lisa and Tusing so as to constitute the functional equivalent of a marriage." Yet, earlier in the decision, the majority noted the testimony of Melissa Amburgy, who testified that Lisa informed her that "Lisa and Tusing helped each other out financially." Clearly, there was independent evidence in the record of financial comingling. However, since this determination is within the purview of the trier of fact and some competent, credible evidence exists in the record to support the court's decision, I must find no abuse of discretion in the second and third assignments of error.
 {¶ 57} I respectfully dissent with the majority's resolution of the first assignment of *Page 17 
error. Specifically, I disagree with the majority's interpretation of R.C. 3109.04(E)(1)(a) and the trial court's refusal to interview the child in this case in compliance with R.C. 3109.04(B).
 {¶ 58} As the majority indicates, R.C. 3109.04(E)(1)(a) governs the modification of an existing custody arrangement, providing that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."
 {¶ 59} The majority in this case found no error in the trial court's refusal to conduct an interview with the child. In support, the majority relied upon Terry L. v. Eva E., Madison App. No. CA2006-05-019,2007-Ohio-916, an earlier decision of this court. In Terry L, this court found that R.C. 3109.04(E)(1)(a) prescribes a two-tiered proceeding. First, the trial court must make a foundational finding of a change in circumstances. Id. at ¶ 26. If the court determines that a change of circumstances has occurred, the trial court then determines the best interests of the children and may interview the child pursuant to R.C. 3109.04(B). Id. However, if the court does not find a change of circumstances, "it d[oes] not need to address the child's best interest, and thus, [is] not required to conduct an in camera interview." Id. TheTerry L. court adopted this two-tiered analysis on the basis of the Ninth Appellate District's decision in Riggle v. Riggle, Wayne App. No. 01CA0012, 2001-Ohio-1376, and the First Appellate *Page 18 
District's decision in Guess v. Springer, Hamilton App. No. C-010348, 2001-Ohio-4015. Id. Ultimately, this court ruled that the juvenile court in Terry L. did not err by failing to conduct an in camera interview of the child because, like the case at bar, the court did not make the prerequisite finding of a change of circumstances. Id.
 {¶ 60} The Supreme Court of Ohio has held that "the best-interest-of-the-child standard should be used for any custody modification petitions filed by a natural parent." Hockstok v.Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 38. Interpreting R.C. 3109.04(E)(1)(a) as a two-tiered analysis would allow a court to completely ignore the best interest of the child, which the Ohio Supreme Court has also identified as the primary concern in custody matters.Davis v. Flickinger, 77 Ohio St.3d 415, 420, 1997-Ohio-260, citing,Pater v. Pater (1992), 63 Ohio St.3d 393, 403. Moreover, the two-tiered analysis allows a trial court to disregard the mandates of R.C. 3109.04(B)(1).
 {¶ 61} R.C. 3109.04(B)(1) provides, in full, "[w]hen making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in thebest interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." (Emphasis added.)
 {¶ 62} "It is a well-settled rule of statutory interpretation that statutory provisions *Page 19 
be read as an interrelated body of law." Fisher v. Hasenjager,116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 32, quoting State v. Moaning,76 Ohio St.3d 126, 128, 1996-Ohio-413. As the Supreme Court has directed, R.C. 3109.04(B)(1) demands that a court examine the best interest of the children in all allocations of parental rights and responsibilities. R.C. 3109.04(B)(1) precedes R.C. 3109.04(E)(1)(a) and controls all proceedings allocating parental rights and responsibilities, including modifications under R.C. 3109.04(E)(1)(a).
 {¶ 63} Further, as a matter of statutory construction, in drafting R.C. 3109.04(E)(1)(a), the Ohio Legislature referred to "change in custody" and "best interest of the child" in the conjunctive, using the word "and" to connect the elements. If the legislature wished to create a two-tiered analysis it would have used "first," "before," numbered the elements, or used some other method to indicate a tiered approach.
 {¶ 64} On three separate occasions, the Ohio Supreme Court has substantively addressed R.C. 3109.04(E)(1)(a). Not once did the court apply, prescribe, or even allude to, a multi-tiered analysis requiring a requisite or initial finding of change of circumstances before hearing or considering evidence relating to the best interest of the child. Nor did the court find that R.C. 3109.04(E)(1)(a) precludes the trial court from hearing evidence regarding best interest until a change of circumstances is established.
 {¶ 65} In Davis v. Flickinger, 77 Ohio St.3d 415, the Ohio Supreme Court reviewed R.C. 3109.04(E)(1)(a) to determine the appropriate standard of appellate review. In holding that the abuse of discretion standard controlled, the Ohio Supreme Court reviewed the requirements of R.C. 3109.04(E)(1)(a) in the context of the facts of the case. Id. Notably, the court began its analysis by addressing the best interest of the child. The court stated, "[w]hen one parent begins to cut out another parent, especially *Page 20 
one that has been fully involved in that child's life, the best interest of the child is materially affected. * * * To ask to totally end a child's relationship with a heavily involved and obviously caring parent demonstrates, on the part of the mother, a clear disregard for the best interest of the child." Id. at 420. (Emphasis sic.) The court then applied a combined analysis, simultaneously addressing the interaction between a change of circumstances and the best interest of the child factors. "While a new marriage, alone usually does not constitute a sufficient change in circumstances, a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation, may be an unforeseen change in circumstances warranting further inquiry into the best interest of the child." In concluding their analysis, the court stated, "[i]n addition, the court could consider the change in circumstances created by the maturing of the child." Id.[3]
 {¶ 66} Most notably, however, the court emphasized, "[i]t is the role of a trial judge at a custody hearing to consider all relevant factors, and then reach a decision. That decision is based primarily on the best interests of the child, with all other concerns of secondary importance." Id. at 420, citing, Pater v. Pater (1992),63 Ohio St.3d 393, 403. (Emphasis sic.)
 {¶ 67} Similarly, in In re Brayden James, 113 Ohio St.3d 420,2007-Ohio-2335, the Ohio Supreme Court considered whether the "change of circumstances" element in *Page 21 
R.C. 3109.04(E)(1)(a) was constitutional. In finding that R.C. 3109.04(E)(1)(a) satisfied constitutional scrutiny, the court referred to the change-of-circumstances and best-interest-of-the-child elements as "conjunctive statutory requirements." Id. at ¶ 9.
 {¶ 68} Recently, in Fisher v. Hasenjager, 2007-Ohio-5589, the court addressed a conflict between the Third Appellate District and this court. Id. at ¶ 1. In affirming this court's judgment, the court held that "R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian." Id. at ¶ 26. Concluding, the court stated, "we hold that a modification of the designation of residential parent and legal custodian of a child requires a determination that a `change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child, pursuant to R.C. 3109.04(E)(1)(a)." Id. at ¶ 37.[4]
 {¶ 69} As discussed above, the Ohio Supreme Court has never ruled that R.C. 3109.04(E)(1)(a) creates a two-tiered analysis. Rather, the Supreme Court has held *Page 22 
that change of circumstances and best interest of the child are "conjunctive statutory requirements" and that a court must "consider all relevant factors" during a R.C. 3109.04(E)(1)(a) custody evaluation.James at ¶ 9; Davis at 420. Moreover, the court has made it abundantly clear that the custody determination should be "based primarily on the best interest of the child, with all other concerns of secondary importance." Id.
 {¶ 70} Requiring a trial court to apply a two-tiered analysis when examining a potential modification under R.C. 3109.04(E)(1)(a), like the majority prescribes, allows a trial court to completely ignore the best interest of the child. As displayed in the Supreme Court's analysis inDavis, a change of circumstances and the best interest of the child are not unrelated elements, requiring separate evidentiary hearings. Instead, evidence may pertain and be applicable to both elements.
 {¶ 71} R.C. 3109.04(B)(1) requires a trial court to interview a child if requested by either party to determine the best interest of the child. Hockstock at ¶ 31. Since best interest of the child is always at issue during a custody modification proceeding under R.C. 3109.04(E)(1)(a), a court must conduct an interview with the child when such a request is made.
 {¶ 72} Additionally, from an evidentiary standpoint, refusing to interview the child deprives the court of substantial evidence. Both parties went to great lengths in accumulating and presenting evidence regarding a change of circumstances in this case, including driving past Lisa's home hundreds of times, hiring a private detective, and attempting to establish or disprove financial co-mingling. What better evidence could be available for the court to determine whether a change of circumstance has *Page 23 
occurred than the information provided by the affected child?
 {¶ 73} I recognize that my analysis would create additional work at the trial level, requiring the court to interview minor children in most situations. However, an abundance of caution is warranted because custody decisions substantially affect the lives of the children involved. The parties in the case at bar have two minor daughters with a sufficient maturity level to understand the situation. At the very least, the girls have witnessed their mother's boyfriend, and at times his children, repeatedly stay overnight at their home. Under the majority's analysis, the trial court in this case would never know the extent of the situation or the impact it may have on the children at the center of this dispute because it refused to gain their perspective. A trial court should be cognizant of what goes on behind closed doors and the feelings of everyone involved, especially in custody situations where the children are mature enough to comprehend the situation and express their viewpoint.
 {¶ 74} I also recognize that Mark could have called his daughters to testify directly at the hearing in this case. However, I understand a parent's reluctance in requiring his or her child to testify in a custody proceeding as it potentially places the child in a very precarious position. In such situations, an in-camera interview is desired because the law requires it to remain confidential. R.C. 3109.04(B)(2)(c).
 {¶ 75} In his dissent in Riggle, the Honorable Judge Whitmore of the Ninth Appellate District presented a similar argument on this issue. "To say that the trial court did not err in failing to perform [an interview with the children pursuant to R.C. 3109.04(B)(1)] because the court did not find a change of circumstances is to judicially establish a two part procedure not provided in R.C. 3109.04(B)(1). * * * This is not how *Page 24 
the procedure works. * * * All of the evidence for both determinations comes in at the same time and then is sifted through by the trial court. Since the trial court never met the child, it was deprived of important information that would have fully informed the court's judgment while also honoring the mandatory provisions of R.C. 3109.04(B)(1)."
 {¶ 76} In order to modify custody under R.C. 3109.04(E)(1)(a), a court must find the presence of both elements. Both elements are necessary to warrant a modification of custody and both should be examined as simultaneous factors in light of the evidence. The majority's analysis places primary importance on change of circumstances because it allows a trial court to summarily dismiss cases without considering all relevant evidence, such as the child's viewpoint, or address the primary objective in custody proceedings, the best interest of the child.Davis at 420.
 {¶ 77} Since the majority reads a nonexistent tiered analysis into R.C. 3109.04(E)(1)(a) and the trial court erred by refusing to interview the child as mandated by R.C. 3109.04(B)(1), I respectfully dissent as to the first assignment of error.
[3] I recognize that in Davis the Ohio Supreme Court stated, "R.C. 3109.04 requires only a finding of a `change in circumstances' before a trial court can determine the best interest of the child in considering a change of custody. Nowhere in this statute does the word `substantial' appear." Id. at 417. However, this statement must be read in context of the court's opinion. Before Davis, several appellate jurisdictions in Ohio believed that a "change in circumstances" under R.C. 3109.04(E)(1)(a) must be "substantial." The Court's foregoing statement in Davis was made to clarify that R.C. 3109.04(E)(1)(a) only requires a finding of "change of circumstances," not that the change be "substantial." The court was not prescribing a two-tiered analysis. Rather, the court was eliminating the non-existent "substantial" standard imposed by some districts. Moreover, as highlighted above, the court in Davis first analyzed the best interest of the child before addressing the change of circumstances.
[4] {¶ a} In Fisher, the Supreme Court sought to distinguish parenting modifications under R.C. 3109.04(E)(1)(a) and R.C. 3109.04(E)(2)(b). Id. at ¶ 1. In Fisher, the court held that R.C. 3109.04(E)(1)(a) controlled during modifications of prior decrees or orders allocating parental rights, while R.C. 3109(E)(2)(b) controlled during modifications of a shared parenting plans. Id. at ¶ 29. The court distinguished between a "plan" and an "order," finding that the "plan" only includes provisions "relevant to the care of the child, such as the child's living arrangements, medical care, and school placement." Id. at ¶ 30. In contrast, a parenting "order" or "decree" adopted by the court designates the residential parent or legal custodian. Id. at ¶ 31. Modifications to the residential parent or legal custodian designation cannot be made pursuant to R.C. 3109.04(E)(2)(b) because those designations are not a "term" of a shared parenting plan. Id. at ¶ 27 and ¶ 31. Due to the significance of the custody determination, a higher threshold is required for modification. Id. at ¶ 34.
{¶ b} The majority primarily relies upon the Supreme Court's dicta inFisher that "a `change' must have occurred in the life of the child or the parent before the court will consider whether the currentdesignation of residential parent and legal custodian should bealtered." Id. at ¶ 33. (Emphasis supra.) However, this statementnever mentions the best interest of the child nor does it mandate that the court must find the "change in circumstances" before addressing thebest interest of the child.
 {¶ c} Rather, I submit that Fisher supports the position that no tiered analysis exists. The court held that a "change in circumstances" finding is required before modifying custody under R.C. 3109.04(E)(1)(a), but the court never stated that the "change in circumstances" determination must be made before examining the best interest of the child. Instead, the court concluded that in order to modify custody under R.C. 3109.04(E)(1)(a) a court must find a "change in circumstances," in addition to finding that a modification is in "the best interest of the child." Id. at syllabus; R.C. 3109.04(E)(1)(a). *Page 1