STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| WENDY A. SIMKINS | ) | CASE NO. 11 MA 80 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DANIEL PEREZ | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case No. 04 JI 619

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellant: Atty. Matthew C. Giannini
10404 South Commons Place
Suite 200
Youngstown, Ohio 44514

For Defendant-Appellee: Atty. Robert J. Rohrbaugh, II
Robert J. Rohrbaugh, II, LLC
4800 Market Street, Suite A
Boardman, Ohio 44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 16, 2012

WAITE, P.J.

{¶1} This appeal presents an issue regarding a change in custody of the parties' minor child. Appellant argues that the trial court failed to properly apply the change in circumstances requirement of R.C. 3109.04 when modifying a prior custody decree. The record reflects that the parties mutually altered the terms of their parenting plan, resulting in Appellee's motion to modify the custody order. Appellant subsequently filed a notice of relocation and in fact relocated to Kentucky without informing Appellee of her date of departure and mischaracterized to the trial court the reasons for her move. The trial court found that two separate changes in circumstance occurred and made the determination that a change in custody was in the best interest of the child. Appellant's arguments on appeal completely misconstrue the trial court's decision and are not well-taken. The decision of the trial court is affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

{¶2} Appellant Wendy Simkins and Appellee Daniel Perez had a child, M.S., in 2004. The parties were never married. Appellee's parentage was established in an administrative action confirmed by the juvenile court, and support was ordered. In 2005 Appellee filed a complaint for custody, and Appellant filed a competing motion to allocate parental rights. A guardian ad litem was appointed and litigation continued into the following year. Relations between the parties became increasingly acrimonious; additional motions were filed, counsel for Appellant was replaced several times, and in the following year a new guardian ad litem was appointed and Appellee filed a third motion seeking custody. The custody issue was ultimately

resolved the following year, on May 2, 2008, with an agreed judgment entry. The entry stated that Appellant would remain the custodial and residential parent and Appellee was given parenting time two days a week and on alternate weekends. Holidays were shared according to the court's standard order, with summer visitation alternating by week. Appellee was ordered to pay support, and Appellant was allowed to claim the child as a dependant for tax purposes for all years, beginning in 2007. Both parents were required to notify the court and the other party sixty (60) days prior to any planned relocation. Upon notice to the court of intent to relocate, the court would determine on motion whether a change in the visitation schedule was in the best interests of the child.

{¶3} On May 4, 2009, a year after the agreed entry, Appellee filed a motion seeking to reallocate parenting rights, child support, and the dependant child tax exemption due to a substantial change in circumstances. A guardian ad litem was appointed. Appellant failed to appear at the initial pre-trial in August because she was working in New Jersey and was delayed there with car trouble. She was unaware a guardian ad litem had been appointed. On September 2, 2009, in violation of the requirement that she provide sixty (60) days' notice, Appellant filed a notice of intent to relocate indicating that she would move to Lexington, Kentucky, effective October 1, 2009, allegedly in furtherance of a new, higher paying job. Appellee filed his objections to the notice of intent on September 9, 2009, citing the child's substantial family contacts in Mahoning County. In November a long distance visitation schedule was ordered, and Appellee's visitation was reduced to alternate

weekends. On the day of her March 15, 2010 trial, Appellant dismissed her counsel. The court decided to hear testimony only as to the existence of a change in circumstances that day, and scheduled two later dates for testimony concerning the best interests of the child. Trial was rescheduled for April 16, but Appellant sought a continuance to which Appellee objected and filed a show cause motion and an interim motion for custody alleging that Appellant, who was now pregnant and living in Kentucky with her boyfriend, was using her pregnancy to delay proceedings and had terminated all visitation. Ultimately, according to the court there were five days of trial conducted over a four or five month period. The record is unclear as to any dates other than the final three trial days: July 15, September 23, and September 24, 2010. The transcript provided to this Court by Appellant covers only those specific dates, although references are made to prior testimony from Appellant.

{¶4} Testimony shows that Appellee married in April 2008 and was living in Youngstown with his wife and their newborn in a three bedroom house Appellee owned for three years at the time of trial. Both M.S. and the newborn have their own rooms. M.S.'s room is set up for her exclusive use, and is not a guest room. During the same period, Appellant moved at least three times and lived at four different addresses in the area before moving to Kentucky. Although she was entitled to claim M.S. as her dependant and made more than $12,000.00 each year of the relevant time period, Appellant did not file tax returns in tax years 2008 and 2009, and could not remember if she had filed in 2006 or 2007. At trial she was unsure where her W-2 forms were and never subsequently produced them. By the last day of trial,

Appellant was engaged, living with her fiancé in Kentucky, and a homemaker. She had lived at the same Kentucky address for approximately one year. Her home in Kentucky was leased by her fiancé on a one-year term with the goal to eventually own the property, however, as the first year was coming to an end they had decided to see if they could instead rent on a month-to-month basis. Appellant testified that her name appears on the lease, but failed to produce a copy of that lease despite multiple requests both before and during trial. She suggested that part of the reason for switching to a month-to-month lease was to allow her to move if the court decided to grant Appellee's custody motion. Appellant did not remember when she became engaged or when she started dating her fiancé but it appears that it may have roughly coincided with her move to Kentucky.

{¶5} Appellant admitted during her testimony that she did not discuss her move with Appellee, even though she had decided in August, or earlier, that she would move and therefore did not enroll M.S. in kindergarten in Ohio. Appellant further admitted that although her notice of relocation reflects as the reason for the move that she was taking a new job with better opportunities for herself and M.S., she was actually going to be working from home for Precision Marketing, the same company she was working for in Ohio, and that the position did not require her to move out of state. Although she appears to have planned to work from home in Kentucky, by the last day of trial she testified that she had not worked since October 2009, the date of her move.

**{¶6}** Appellant also admitted she failed to pay rent at two of her Ohio addresses resulting in at least two eviction actions, one of which was dismissed when she brought her rent obligation current. Criminal charges were also filed against her by her former landlord in connection with items she took with her in the move to Kentucky. She testified that although she thought it was important that M.S. spend time with her father, Appellant was unable to accommodate Appellee's requests to spend time with M.S. on Labor Day and during her fall break because she had other plans.

**{¶7}** Appellee testified that beginning in November 2008, several months after the agreed entry granting him approximately twelve (12) days a month in parenting time, he was instead his child's primary caregiver for 20 to 29 days a month, due to Appellant's work schedule. He continued to be the primary caregiver until October 2009, when Appellant moved to Kentucky. (Tr., Vol. I, pp. 12-16.) It was due to this drastic increase in the time the child was spending with him because of Appellant's change in employment that Appellee initially filed his motion for custody. Appellee and his wife had discussed his desire for custody and planned the working arrangements they would make to ensure child care for both children. Although the custody motion was pending and Appellant was required to give sixty (60) days notice of an intent to relocate, Appellee was not informed by Appellant of the date of her move to Kentucky. On October 5, 2009, when he arrived to pick up M.S. he discovered that no one was home.

**{¶8}** Between May 2008 and October 2009, Appellant would only communicate with Appellee via text or email. Although they shared parenting responsibilities, Appellant would not inform Appellee of school events, conferences or share M.S.'s grade reports. She also refused to provide the name of M.S.'s physician when M.S. was prescribed allergy medication while living in Kentucky. M.S.'s school refused to give Appellee any information concerning M.S. and would not allow him and his then fiancée to enter the school building for a Halloween celebration. After his attorney intervened, he was allowed to attend a parent-teacher conference. After Appellant moved to Kentucky she failed to facilitate visitation even when she traveled to Youngtown with M.S. for trial dates and other personal reasons; when Appellee learned M.S. was in town and asked for visitation, Appellant refused. Appellant did not allow Appellee to have the agreed telephone contact with M.S. during the week.

**{¶9}** The guardian ad litem testified that he met with the child four times: twice in his office, once in Appellant's home and once in Appellee's home. He examined both houses and the schooling options available in both locations. He felt both locations were suitable and both parents loved M.S. and provided clothing and toys for her generously. He found that although they both cared for their daughter very much, they were unable to get along with one another. The guardian nevertheless believed that due to Appellant's stability issues and due to the presence of both maternal and fraternal grandparents and other family in the Youngstown area, the move to Kentucky limited M.S.'s access to her family and vice versa. For these

reasons and because Appellant had indicated her willingness to move to Columbus to be nearer the rest of the family if M.S. were to live with Appellee, the guardian ad litem recommended that custody be awarded to Appellee. The guardian also recommended out of practicality, having himself driven the route to Kentucky, that so long as Appellant lived near Lexington, any visitation be restricted to long holiday weekends with no return to the original alternate weekend visitation schedule.

{¶10} A magistrate's decision and a journal entry adopting the magistrate's decision were filed on February 28, 2011. Both included extensive findings of fact and conclusions of law and granted Appellee's motion for custody. Appellant filed timely objections to the magistrate's decision. On April 29, 2011 the trial court issued a judgment entry including both findings of fact and conclusions of law. The trial court found that multiple changes in circumstance occurred, including the initial change in visitation between December 2008 and October 2009 when M.S. was spending the majority of the daylight hours every week with Appellee, which is the grounds for the change in custody identified in Appellee's motion. The court also found that a change in circumstances occurred when Appellant undertook what the court characterized as her self-serving move to Kentucky, which substantially changed the time M.S. was able to spend with her father. The move occurred after both the initial change in circumstances and after the filing of Appellee's motion seeking a change of custody. The move was, however prior to the date of trial and was known by the court when it ruled on the motion for change of custody. The court, after finding that there was a change in circumstance, proceeded to apply R.C.

3109.04(F)(1). The court specified that although it had considered all ten factors in this section, it found three to be most influential in its decision: the child's interactions with parents, siblings, and others; the parent more likely to facilitate visitation; and whether either parent had established residence outside the state. The court concluded that it was in the child's best interests to live with Appellee. Appellant filed a motion for stay pending appeal on May 9, 2011 and her timely notice of appeal on May 16, 2011.

Argument and Law

ASSIGNMENT OF ERROR

**{¶11}** THE TRIAL COURT ERRED BY FAILING TO

COMPLY WITH OHIO STATUTE IN ITS ORDER

MODIFYING CUSTODY TO THE APPELLEE/FATHER.

**{¶12}** Appellant argues four issues under her single assignment of error: (1) the trial court did not have jurisdiction to modify the prior custody decree because the only change in circumstances occurred after Appellee filed his motion seeking a change in custody on other grounds; (2) the change in circumstances was not sufficient to trigger the continuing jurisdiction of the trial court; (3) a trial court's finding of a change in circumstances cannot be dependant on the agreement or stipulation of the parties; and (4) the evidence presented did not support a finding that it was in the child's best interest to reallocate custody. Appellant's arguments mischaracterize both the applicable law and the substance of the trial court's decision.

{¶13} When a juvenile court in a parentage action issues an order allocating parental rights and responsibilities, that court retains continuing jurisdiction to modify or revoke the order. This jurisdiction extends to all matters pertaining to the care, custody, support, and education of the minor child. *Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 444, 705 N.E.2d 318 (1999), R.C. 3111.13, .16. A trial court is given broad discretion to do what is equitable depending on the facts and circumstances of each child custody case and in its determination of parental custody rights. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). The trial court's discretion to alter a prior custody decree is not absolute and is governed by R.C. 3109.04(E)(1)(a), which provides in pertinent part:

{¶14} The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a

modification is in the best interest of the child and one of the following applies:

**{¶15}** (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

**{¶16}** (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

**{¶17}** (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶18}** Due to the significance of custody determinations in the life of the child, both the Supreme Court and the legislature have placed conditions and burdens on the deciding court designed to ensure the greatest measure of stability practicable under the circumstances. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶34-36, *see also In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶28. It is also due to the desire for stability that courts are given discretion to consider any facts that arise post-decree as well as any facts not known to the court at the time of the initial decree when determining whether

there has been a change in circumstances. R.C. 3109.04(E)(1)(a). This discretion is intended to ensure thorough fact-specific and lasting determinations.

**{¶19}** The *Fisher* court acknowledged that the burden to show a "change" is a high one. *Id.*, ¶33; see also *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997) ("there must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change.") (Emphasis deleted.) Nevertheless,

> **{¶20}** the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in circumstances because of the child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues. *Id.* at 416-417.

**{¶21}** A trial court's custody determination will not be disturbed on review unless it involves an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). A court abuses its discretion when its decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1982). Without such an abuse of discretion, a custody decision will not be reversed when it is supported by a substantial amount of competent and credible evidence. *Bechtol* at 23.

{¶22} The reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citation omitted.) *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶23} Both the magistrate and the trial court in this instance issued thorough decisions specifically identifying the findings of fact and conclusions of law driving those decisions. The Mahoning County Juvenile Court had jurisdiction over the custody matter because it arose out of the paternity suit. Although Appellant argues that the trial court had no jurisdiction to consider an additional post-motion fact when deciding whether there was a change in circumstances, there is no defect in the court's jurisdiction over the matter. The actual issue Appellant attempts to raise is whether it was an abuse of discretion for the court to consider facts that arose post-motion but prejudgment.

{¶24} The statute governing the modification of custody decrees restricts the court from revisiting facts concerning circumstances that occurred prior to its existing custody determination where these facts were known to the court before issuing its ruling. R.C. 3109.04(E)(1)(a). However, nothing in the statute or caselaw restricts the court to the reasons provided in the motion itself in making this determination. In fact, the statute specifically charges the court to not only consider all information before it, but to also seek additional information before reaching its conclusions.

{¶25} This matter appears to be analogous to *Davis v. Flickinger*, supra, in which the Supreme Court noted that the trial court "must be given wide latitude to

consider all issues which support such a change, including a change in circumstances because of the child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues." Id. at 416-417, 674 N.E.2d at 1161. In *Davis* the Supreme Court reinstated the trial court's decision reallocating custody to the father. In *Davis* both individuals were loving, involved parents but there was an abrupt shift in the attitude of the custodial mother who, upon remarriage, restricted and then sought to terminate visitation. The Supreme Court found that the mother's willingness to completely terminate her child's relationship with a heavily involved, obviously caring parent demonstrated a clear disregard for the best interests of the child. Id. at 419.

{¶26} Although in the matter at bar Appellant has not moved to terminate visitation, her move to Kentucky has become in many ways the functional equivalent. The trial court made thirty-three specific findings of fact concerning the relationship between the parties, outlining a situation where the parties had mutually modified their initial parenting arrangements to the point of reversing their roles, followed by the unilateral decision of Appellant to all but terminate the relationship between M.S. and Appellee.

{¶27} Contrary to Appellant's argument, the trial court does not rely solely on her move to Kentucky to base a finding of a change in circumstances, nor does the trial court rely on her stipulation that the move to Kentucky was a change in circumstances. Instead, the trial court looked at the circumstances that existed

before Appellant's move and found that, as Appellee had essentially become the full-time caregiver for the child because of Appellant's work schedule, a change in circumstances occurred. The court then held that once Appellant moved out of state and essentially cut off all communication with the child, a second change in circumstances finding was warranted.

**{¶28}** Once the trial court established that a change in circumstances occurred, it was required to look to the best interests of the child. Again, the court looked to Appellant's failure to allow visitation or communication with the child. The trial court found Appellant's attitude toward Appellee's request to take M.S. to his family reunion particularly telling: "mother acknowledged that by not agreeing to her terms, father 'lost his chance.' Extra visitation was hers to dictate because she 'held all the cards.' It is readily apparent to this Court that mother is not likely to facilitate visitation." (2/28/11 J.E., p. 4.) Certainly the trial court looked at Appellant's reason for her out of state move and found that she had been less than credible to the court. Not only was she not required to leave the state in order to find a better job, she stopped working altogether as a result of the move. The court weighed the presence of maternal and paternal relatives in the Youngstown area, the relative stability of the two households, the strain long distance visitation was placing on M.S., Appellant's willingness to move to Columbus, Ohio, and her "pointless and self-serving relocation to Kentucky." (2/28/11 J.E., p. 4.) The court concluded that both parents genuinely cared for M.S. and were as individuals, good parents to her, but that it was nevertheless in her best interests to reside in Appellee's stable home among her

relatives. Based on the reasoning of the court, the trial court determined that the harm that might result from the change was outweighed by the benefit to the child of such a change. Because the trial court's detailed decision applied the proper criteria and is directly supported by the evidence in the record Appellant's sole assignment of error is without merit and is overruled.

## Conclusion

{¶29} Appellant's sole assignment of error is without merit. The trial court properly considered the record before it, applied the controlling statute, and made a ruling supported by the evidence. The trial court did not abuse its discretion in its decision. Accordingly, Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.