[Cite as *S.S. v. F.M.*, 2020-Ohio-3827.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


S.S.                                                    Court of Appeals No. L-19-1216

        Appellant                                Trial Court No. JC 16254109

v.

F.M.                                                    **DECISION AND JUDGMENT**

        Appellee                                  Decided:  July 24, 2020

* * * * *

Angelina Wagner, for appellant.

Rebecca E. Shope, for appellee.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, S.S., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, vacating the magistrate's decision issued in this child custody matter after finding well-taken the objections to the magistrate's decision that were filed by appellee, F.M.  Finding no error in the trial court's determination that a

change of circumstances has not occurred in this case, and thus a modification of the preexisting custody arrangement is unwarranted, we affirm.

## A. Facts and Procedural Background

{¶ 2} This matter originated on March 14, 2016, when appellant filed his complaint seeking the allocation of parental rights and responsibilities over his son, C.S. After the parties reached an agreement as to the issues raised in appellant's complaint, the court issued its November 15, 2016 judgment entry approving the parties' agreement and setting forth the parental rights and responsibilities embodied therein. Under the court's entry, appellee remained C.S.'s primary residential parent and legal custodian, and appellant was awarded parenting time according to the Court Schedule that was attached to the court's entry as an exhibit.

{¶ 3} On May 25, 2018, appellant filed a motion to modify the court's prior award of custody of his son, C.S. In his motion, appellant sought custody of C.S., based upon a substantial change in circumstances since the court issued its November 15, 2016 judgment entry, namely that appellee was homeless, unemployed, abusing drugs, and neglecting C.S. Four days later, on May 29, 2018, appellee also filed a motion to modify the court's prior custody award. In her motion, appellee asserted that appellant had "taken custody of the child, * * * and will not let me see or talk to him."

{¶ 4} After the parties filed their respective motions, the juvenile court set the matter for an emergency hearing. On May 30, 2018, the hearing was conducted,

2.

culminating in the court's order continuing the matter for an expedited hearing and naming appellant the residential parent with visitation of C.S. awarded to appellee.

{¶ 5} On June 4, 2018, the parties appeared before the juvenile court for an expedited hearing on their motions. At the hearing, the parties agreed as to interim orders, and the court found that C.S.'s best interests were served by an award of temporary custody to appellant with supervised visitation awarded to appellee. At a subsequent hearing on August 30, 2018, the court modified its order, granting appellee unsupervised parenting time.

{¶ 6} On January 10, 2019, appellee filed a motion for contempt, in which she asserted that appellant had violated the court's orders concerning her visitation rights with C.S. by denying her access to C.S. "on multiple dates in December 2018 and January 2019 during [her] scheduled parenting time and during the minor child's winter break." In order to make up for her lost visitation time due to appellant's alleged interference, appellee requested additional visitation time with C.S. A decision on appellee's motion for contempt is not discernable from the record.

{¶ 7} On April 22, 2019, this matter proceeded to trial before a magistrate. At the trial, appellant testified that the concerns that prompted his motion were resolved "in moderation." Appellant went on to voice concerns regarding appellee. Specifically, appellant testified that, to his knowledge, appellee was unemployed and thus would be unable to support C.S. Appellant acknowledged that appellee could provide safe housing for C.S. However, appellant took issue with the school that C.S. would attend were he to

3.

live with appellee, Ottawa River Elementary, because he believes C.S.'s cousins, who also attend Ottawa River Elementary, would be a distraction to C.S.

{¶ 8} As to the custody arrangement set forth in the juvenile court's November 15, 2016 entry, appellant testified that C.S. was not doing well with splitting his time between appellant and appellee throughout the week. According to appellant, C.S. "gets so worked up, and it's so hard to get him unworked up" when transferring him from one parent to another parent. Appellant went on to explain that C.S. usually calms down as soon as appellee walks away from the exchange.

{¶ 9} On cross-examination, appellant explained that his indication of appellee's alleged homelessness was due to the fact that he was unaware of appellee's living arrangements at the time he filed his motion. Appellant acknowledged that appellee was currently living with her parents at the time of trial, and thus was not homeless.

{¶ 10} In response to appellant's claim that appellee was abusing drugs, appellee's counsel asked appellant about the results of drug screens that he submitted during the pendency of these proceedings. Appellant admitted that he tested positive for marijuana. Further, appellant acknowledged that he had never observed appellee using drugs in front of C.S.

{¶ 11} After appellant finished testifying, he called his wife, K.S., to the stand. During her testimony, K.S. stated her belief that appellant should be granted custody of C.S. K.S.'s position was based upon the fact that appellant was employed, had his own home, and lived in a school district that was "more beneficial to [C.S.] at this point." On

4.

cross-examination, K.S. acknowledged that she was not involved with C.S.'s prior schooling and therefore could not fairly compare C.S.'s performance in appellee's school district to his performance in appellant's school district.

{¶ 12} Following K.S.'s testimony, appellant called N.P. to the stand. N.P. is the father of appellee's children, with the exception of C.S. Like appellant, N.P. filed a motion seeking an award of custody of his children in May 2018. Ultimately, appellee and N.P. reached an agreement that left appellee's custody of the children intact and increased N.P.'s visitation time, thereby resolving the issues that gave rise to N.P.'s filing of his motion. Despite the agreement, N.P. testified that he was not permitted to see his children due to a molestation complaint that was filed with children's services.

{¶ 13} For his fourth and final witness, appellant called his mother, K.H. K.H. testified that there was a one-year period of time during which appellee did not permit her to see C.S., having revoked such permission after K.H. took C.S. to see appellant prior to appellant undergoing surgery. According to K.H., she helped appellant file his request for visitation so that she could continue to see C.S.

{¶ 14} At the conclusion of K.H.'s testimony, appellant rested. Thereafter, appellee took the stand. Appellee testified as to the allegations raised by appellant concerning her alleged homelessness, drug abuse, and lack of employment.

{¶ 15} As to housing, appellee insisted that she has never been homeless, and she stated that she and C.S. currently reside at her parents' home. In terms of the schooling issue appellant raised in his testimony regarding C.S.'s attendance at Ottawa River

5.

Elementary, appellee stated that C.S. was "thriving" and C.S.'s teacher reported that C.S.'s cousins had a positive impact on his educational development.

{¶ 16} Turning to appellant's allegation of drug abuse, appellee testified that she has never used drugs in front of C.S. Appellee acknowledged that she submitted two diluted drug screens during the pendency of this case, but noted that her most recent drug screen was negative while appellant's most recent drug screen was positive for marijuana. Appellee further committed to remaining drug-free moving forward.

{¶ 17} Later on in appellee's testimony, she admitted that she was presently unemployed. Nonetheless, appellee stated that her unemployment would not impact her ability to care for C.S.

{¶ 18} Following appellee's testimony, C.S.'s guardian ad litem, Michael Bryant, was called to the stand. In his report submitted to the trial court in this case, Bryant suggested that the court designate appellee the residential parent and award appellant parenting time according to the court's local schedule.

{¶ 19} At trial, Bryant testified as to the concerns raised by appellant in his motion. Bryant discussed the concerns with appellant, and learned that appellant was primarily troubled that appellee was not spending as much time with C.S. as she suggested. Bryant stated that appellant "made it clear that he didn't think that [appellee] was a bad mom, that * * * she never did anything * * * to neglect [C.S.] or * * * harm him or anything like that." Bryant also testified as to his discussions with C.S., noting that C.S. "made it clear that he * * * wanted to spend more time with mom. He loves

6.

dad, wants to be with dad, * * * but he enjoys being with mom. Mom makes him feel more comfortable, he's more comfortable at mom's house."

{¶ 20} As her final witness, appellee called her mother, M.M., who corroborated appellee's testimony that she has never been homeless. According to M.M., appellee has been living with her since moving out of N.P.'s home in May 2018. M.M. further stated that she has never observed appellee using drugs.

{¶ 21} At the conclusion of M.M.'s testimony, the magistrate took the matter under advisement. Ultimately, the magistrate determined that a change of circumstances had taken place, justifying the modification of the preexisting custodial arrangement. In a decision journalized on May 7, 2019, the magistrate named appellant the residential parent of C.S., and granted appellee visitation "on an alternating week basis."

{¶ 22} On May 21, 2019, appellee filed objections to the magistrate's decision, arguing that the magistrate erred by ignoring the guardian ad litem's recommendation that she remain C.S.'s residential parent.

{¶ 23} On September 12, 2019, the juvenile court issued its decision on appellee's objections. In its decision, the court found that "the issues giving rise to the instant action (i.e., [appellant] alleging [appellee] is homeless, unemployed, abuses drugs and neglects the minor child; and, [appellee] alleging [appellant] is refusing visits with minor child) now appear to be resolved." Consequently, the court went on to state that "there has not been a change of circumstances in the life of the custodian or the minor child that

7.

would warrant a modification of custody at this time," and found appellee's objections well-taken. The result of the trial court's decision was a dismissal of the parties' motions to modify the allocation of parental rights and responsibilities, and a reversion "to the November 15, 2016 Judgement Entry, wherein the parties agreed [appellee] would be named residential parent and legal custodian."

{¶ 24} Following the trial court's decision reversing the magistrate's decision, appellant filed his timely notice of appeal.

## B. Assignments of Error

{¶ 25} On appeal, appellant assigns the following assignments of error for our review:

> 1. The Court's determination that there was not a change in circumstances as required under R.C. 3109.04 to support a grant of Legal Custody to the Father was against the manifest weight of the evidence.
>
> 2. The Court's reversal of the Magistrate's decision was an abuse of discretion.

Because appellant's assignments of error are interrelated, we will address them simultaneously.

## II. Analysis

{¶ 26} In appellant's assignments of error, he contends that the trial court erred in reversing the magistrate's decision and retaining appellee's status as residential parent of C.S.

8.

{¶ 27} To justify a change of custody pursuant to R.C. 3109.04(E), the court must find that there has been a change of circumstances for the child, the child's parent or parents, and that modification of parental rights and responsibilities is in the child's best interests. *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997). In determining whether such a change is sufficient to warrant a custody change, the court must be afforded wide latitude. *Id.* at paragraphs one and two of the syllabus.

{¶ 28} "A finding of a change of circumstances should not be disturbed absent an abuse of discretion." *L.W. v. L.B.*, 6th Dist. Lucas No. L-09-1309, 2010-Ohio-2796, ¶ 52. Moreover, we review the juvenile court's decision reversing the magistrate's decision for an abuse of discretion. *See In re L.M.L.*, 11th Dist. Portage No. 2016-P-0069, 2017-Ohio-7451, ¶ 20, quoting *In re Wiley*, 11th Dist. Portage No. 2008-P-0062, 2009-Ohio-290, ¶ 20 ("'In reviewing a trial court's decision to adopt or reject a magistrate's decision, an appellate court looks for abuse of discretion.'"). An abuse of discretion connotes that the court's attitude was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 29} In its September 12, 2019 judgment entry, the trial court found that appellee had resolved the issues that prompted appellant to seek custody of C.S., namely that appellee was homeless, unemployed, abusing drugs, and neglecting C.S. Consequently, the trial court found that there was not a change of circumstances warranting a change in the custodial arrangement set forth in the court's November 15, 2016 entry.

9.

{¶ 30} Our review of the record in this case supports the trial court's finding of a lack of a change of circumstances. Indeed, by the time of trial, appellant acknowledged that his concerns were mostly resolved. Although appellee was unemployed, she insisted, and appellant admitted, that she could provide safe housing for C.S. Further, appellee had recently submitted a clean drug screen and M.M. testified that she had never observed appellee abusing drugs. Appellant voiced concerns with C.S.'s education, but there was substantial testimony presented by appellee to establish that C.S. was progressing well at Ottawa River Elementary. As to appellant's allegation that appellee was neglectful in her parenting of C.S., appellant admitted to Bryant that appellee "never did anything * * * to neglect [C.S.]."

{¶ 31} Given the record before us, we find that the trial court did not abuse its discretion when it found that appellant failed to establish a change of circumstances that would justify a modification of custody in this case. Absent a change of circumstances, the trial court properly reversed the magistrate's decision modifying the preexisting custodial arrangement between the parties.

{¶ 32} Accordingly, we find appellant's assignments of error not well-taken.

### III. Conclusion

{¶ 33} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.